**ED A. WILSON, INC., Appellant,**

v.

**GENERAL SERVICES ADMINISTRATION,** Appellee.

No. 97–1008.

United States Court of Appeals, Federal Circuit.

Sept. 12, 1997.

Bonnie Lee Goldstein, Vial, Hamilton, Koch & Knox, L.L.P., Dallas, TX, argued, for appellant.

Deborah Ho, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Sharon Y. Eubanks, Deputy Director. Of counsel on the brief was Kevin M. Myles, Assistant Regional Counsel, General Services Administration, Fort Worth, TX.

Before MAYER, RADER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

Ed A. Wilson, Inc. appeals the decision of the General Services Administration Board of Contract Appeals, GSBCA No. 13532–C, 96–2 BCA ¶ 28,545, denying its application for attorney fees and other expenses under the Equal Access to Justice Act. Because the board erred in interpreting that act to preclude an award of attorney fees and expenses to a contractor whose insurer is responsible for paying them, we affirm-in-part, reverse-in-part, and remand.

*Background*

On October 1, 1992, the General Services Administration (GSA) and Ed A. Wilson, Inc. (Wilson), entered a fixed-price contract, under which Wilson was to remodel part of the federal building in Dallas, Texas. During contract performance, a sprinkler line broke, damaging desks, carpets, ceilings, and other items. GSA's contracting officer directed Wilson to repair the broken line. Wilson complied, although it denied responsibility for the break. Wilson then submitted a claim to the contracting officer, seeking $26,293.62 for the repairs, which was denied.

Wilson subsequently filed a claim with its insurer, Bituminous Casualty Corporation (Bituminous). Bituminous paid Wilson $21,445.33, denoted an interest-free loan. It was "repayable only in the event and to the extent of any net recovery [Wilson] may make from any [party] causing or liable for the loss or damage to the property." In exchange for this "loan," Wilson assigned any claim it might have against the government and the amount of any potential recovery to Bituminous. Wilson also granted Bituminous the authority to appeal the contracting officer's denial of its claim to the General Services Administration Board of Contract Appeals. The appeal was to be in Wilson's name but at the expense of Bituminous. In its "Loan Receipt," Wilson expressly ceded responsibility for any litigation to Bituminous, agreeing that "[a]ny legal proceedings are to be under the exclusive direction and control of [Bituminous]."

By letter dated September 28, 1993, Bituminous retained the law firm of Vial, Hamilton, Koch & Knox ("Vial, Hamilton" or "firm") on an hourly basis "for the purposes of appealing the written decision of the Contracting Officer" to the board, which Vial, Hamilton did. The firm submitted monthly bills to Bituminous until April 1995, when it capped its fees at $26,620.90, "except to the extent that [Wilson] receives an award of attorneys' fees." In September 1995, the board held that Wilson was entitled to $20,-836.61 plus interest. *Ed A. Wilson, Inc. v. General Servs. Admin.*, GSBCA No. 12596, 96–1 BCA ¶ 27,934 (1995).

Wilson then submitted an application for an award of $49,209.85, pursuant to the Equal Access to Justice Act, codified in pertinent part at 5 U.S.C.A. § 504 (West 1994 & Supp.1997) ("EAJA" or "Act"). The requested amount includes $43,520.50 for attorney fees, $3,558.27 for attorney expenses, and $2,131.08 for labor costs incurred by Wilson's employees in monitoring the claim. The board denied the application, concluding that (1) the Act does not permit the recovery of Wilson's expenses, and (2) Wilson did not incur any attorney fees or expenses, as required by the Act; Bituminous did.[1] Wilson appeals.

*Discussion*

■ The primary and narrow question [2] before us is whether, under the Act, Wilson has "incurred" legal fees when its insurer is responsible for paying them. This is an issue of statutory interpretation, over which we exercise plenary review. *See, e.g., Texas Food Indus. Ass'n v. USDA*, 81 F.3d 578, 580 (5th Cir.1996) (conclusions of law underlying a denial of attorney fees are reviewed de novo).

1. The board's second holding conflicts with the decision of the Armed Services Board of Contract Appeals (ASBCA) in *Margaret Howard d/b/a River City Van & Storage*, ASBCA No. 28648, 89–3 BCA ¶ 21,936, *aff'g on recons.*, 88–3 BCA ¶ 21,-040, *aff'g on recons.*, 88–2 BCA ¶ 20,655.

2. Wilson also argues that the board erred in deciding that it was not entitled to recover its in-house costs associated with monitoring litigation before the board. Because Wilson has not established any error in this aspect of the board's decision, we affirm it.

■ Because the Act exposes the government to liability for attorney fees and expenses to which it would not otherwise be subjected, it is a waiver of sovereign immunity. *Ardestani v. INS*, 502 U.S. 129, 137, 112 S.Ct. 515, 520–21, 116 L.Ed.2d 496 (1991). As such, it "must be strictly construed in favor of the United States." *Id.* Once Congress has waived sovereign immunity, however, we should not "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*, 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); *see also Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1185 (Fed.Cir.1994) ("The rule requiring strict construction of waivers of sovereign immunity is not a talisman that permits the government to avoid liability in all cases.").

We begin our quest with the language of the statute itself. *Ardestani*, 502 U.S. at 135, 112 S.Ct. at 519–20. The Act provides, in pertinent part, that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses *incurred by that party* in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1) (1994) (emphasis added).[3] To recover these fees and expenses, a corporation also must have had a net worth of $7,000,000 or less and 500 or fewer employees at the time the "adversary adjudication" was initiated. *Id.* § 504(b)(1)(B) (defining "party").

"Neither EAJA nor the legislative history provides a definition of the word 'incur.'" *SEC v. Comserv Corp.*, 908 F.2d 1407, 1413 (8th Cir.1990) (construing 28 U.S.C. § 2412,

3. This section applies to proceedings before the board under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1994). 5 U.S.C. § 504(b)(1)(C)(ii) (1994); *Ardestani*, 502 U.S. at 138, 112 S.Ct. at 521. We limit our analysis, as did the board, to whether Wilson has incurred attorney fees. We address no other element of Wilson's qualifications for an award, which, at least in the first instance, is the board's responsibility.

the Act's provision applying to fees incurred in court proceedings). Relying on the "statute's plain words" and on a dictionary, the board held that fees and expenses are incurred when the prevailing party is either liable for, or subject to paying, them.

While the plain language of a statute always begins, and often ends, a court's inquiry into its meaning, the Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, for 'literalness may strangle meaning.'" *Lynch v. Overholser,* 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) (citations omitted); *see also Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1566–67 (Fed.Cir.1987) (legislative history of the Act warns against an "overly technical construction ... resulting in the unwarranted denial of fees"). While there is some allure to the simplicity of the board's construction, it cannot stand in light of precedent and the purposes underlying the Act.

■ The board's interpretation is broader than precedent permits. It is well-settled that an award of attorney fees is not necessarily contingent upon an obligation to pay counsel. Generally, "awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards." *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir.1977). Of course, there can be no serious dispute that Wilson enjoyed that relationship with Vial, Hamilton. *See Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 108 (2d Cir.1991) ("It is clear beyond cavil that in the insurance context the attorney owes his allegiance, not to the insurance company that retained him but to the insured....").

More specifically, courts have awarded attorney fees under EAJA and similar fee-shifting statutes requiring that fees be "incurred" when the prevailing party is represented by a legal services organization or counsel appearing pro bono. *See Watford v. Heckler,* 765 F.2d 1562, 1567 n. 6 (11th Cir. 1985) ("[I]t is well-settled that, in light of the act's legislative history and for reasons of public policy, plaintiffs who are represented without charge are not generally precluded from an award of attorneys' fees under the EAJA."); *Cornella v. Schweiker,* 728 F.2d 978 (8th Cir.1984). Similarly, the award of attorney fees under the Act has been ruled appropriate when the prevailing party is an attorney appearing pro se. *Jones v. Lujan,* 883 F.2d 1031 (D.C.Cir.1989).

In *Phillips v. General Services Administration,* 924 F.2d 1577 (Fed.Cir.1991), moreover, we held that a prevailing party was entitled to attorney fees in excess of the $2,500 she was obligated to pay, in light of a fee arrangement with her attorney that any additional payment obligation would be contingent upon success and based on a statutory fee award if she prevailed. *Id.* at 1582–83. We construed this arrangement to mean that the prevailing party incurs any attorney fees that may be awarded to her, even though she, herself, would never be responsible for paying her attorney any amount exceeding $2,500. *Id.* There must be an express or implied agreement, however, that the fee award will be paid to the legal representative. *Id.* at 1583.

Similarly, we have awarded attorney fees to litigants represented by salaried union counsel despite the absence of any obligation on the part of the union employee to pay the attorney. *See Devine v. National Treasury Employees Union,* 805 F.2d 384 (Fed.Cir. 1986); *Goodrich v. Department of the Navy,* 733 F.2d 1578 (Fed.Cir.1984) (construing 5 U.S.C. § 7701(g)(1)); *see also National Treasury Employees Union v. Department of Treasury,* 656 F.2d 848 (D.C.Cir.1981) (construing 5 U.S.C. § 552a(g)(3)(B) (1976)). Indeed, in *Goodrich* we stated that attorney fees are incurred by a litigant "if they are incurred in his behalf, even though he does not pay them." 733 F.2d at 1579 (adopting the reasoning of the Merit Systems Protection Board); *see also Phillips,* 924 F.2d at 1583; *cf. American Fed'n of Gov't Employees v. FLRA,* 944 F.2d 922, 933 (D.C.Cir.1991). Vial, Hamilton's services and fees were certainly incurred on behalf of Wilson, the only named appellant before the board.

Indeed, we are unable to discern any material distinction between the union cases and this one. In both, the litigant (either the

union member or the insured) pays a third party (the union or the insurer) for certain benefits. Among these benefits is legal representation for which the litigant will incur no additional obligation of payment to counsel. In this regard, both the union employee and the insured can be viewed as having incurred legal fees insofar as they have paid for legal services in advance as a component of the union dues or insurance premiums. Indeed, that is the view of the ASBCA, and we agree. *See Margaret Howard d/b/a River City Van & Storage*, ASBCA No. 28648, 89–3 BCA ¶ 21,936, at 110,346 ("[A]ppellant has, in effect, prepaid for the legal services it received when it paid premiums on its insurance policy."), *aff'g on recons.*, 88–3 BCA ¶ 21,040, *aff'g on recons.*, 88–2 BCA ¶ 20,655. Thus, whether the linchpin to an award of attorney fees is the actual payment of attorney fees, the existence of an attorney-client relationship, or the incurrence of fees on behalf of an applicant, Wilson meets the standard. Any contrary ruling would subvert the Act's purpose.

"In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). Reading the Act "in light of its purpose 'to diminish the deterrent effect of seeking review of, or defending against, governmental action,'" *Sullivan v. Hudson*, 490 U.S. 877, 890, 109 S.Ct. 2248, 2257, 104 L.Ed.2d 941 (1989), buttresses our conclusion that Wilson incurred, within EAJA's meaning, attorney fees and expenses.

Congress specifically intended "to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani*, 502 U.S. at 138, 112 S.Ct. at 521; *see also Commissioner, INS v. Jean*, 496 U.S. 154, 165 n. 14, 110 S.Ct. 2316, 2322 n. 14, 110 L.Ed.2d 134 (1990) (noting that the Act was intended to benefit small businesses and individuals "for whom cost may be a deterrent to vindicating their rights" (quoting H.R.Rep. No. 96–1418, at 12 (1980))). Disallowing Wilson attorney fees would neither remove the financial disincentives of litigating against the government nor deter the government's unreasonable denial of minor claims filed by its small businesses contracting partners.

Denying a small business, which in its keen acumen has obtained insurance to insulate itself from liability for accidents during contract performance, and thus from potential insolvency, an award of fees for the attorney services that it procured as part of its policy would thwart the Act's purpose of deterring unreasonable governmental action. In fact, it would act as an incentive to deny meritorious claims, thereby requiring the small business to litigate. If the small business has insurance, the government could deny the contractor's claim and litigate any appeal of the denial without any pecuniary risk. Even if the contractor were to win the appeal, there would be no award of attorney fees. The government could act unreasonably not only in its initial denial of the small business' claim but also during the litigation of the appeal, confident in the knowledge that it will be exposed to no attorney fee award. We do not suggest that government contracting officers and counsel "would intentionally do so; we presume that they perform their duties in good faith, and in accordance with the law and governing regulations." *James M. Ellett Constr., Inc. v. United States*, 93 F.3d 1537, 1547 (Fed.Cir.1996). But, we decline to construe the Act in a manner that would circumvent Congress' stated desire to deter unreasonable governmental action.

Indeed, a "party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy." *Jean*, 496 U.S. at 165 n. 14, 110 S.Ct. at 2322 n. 14 (quoting H.R.Rep. No. 96–1418, at 12). Denying Wilson an award of attorney fees because it possessed the foresight to obtain insurance would undermine this congressional purpose and mark a return to the "truncated justice [that] undermines the integrity of the decision-making process," which EAJA was intended to eliminate. *Id.* It would also deter small businesses from challenging unreasonable governmental action.

Had Wilson known that no fee award would be available upon a successful board

disposition, it most likely would have been discouraged from appealing the denial of its claim. The reason, of course, is that once Bituminous learned that Wilson would not be entitled to an attorney fee award, it almost certainly would increase Wilson's insurance premiums.[4] Thus, the denial of attorney fees would reintroduce the cost of litigation as a factor in the small business' decision whether to contest governmental action it deems unreasonable. The small business would have to decide whether it is worth the increased premiums, which it will incur regardless of whether it prevails, to challenge the government. This result steals the very heart of EAJA:

> When there is an opportunity to recover costs, a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment.... By allowing a decision to contest Government action to be based on the merits of the case rather than the cost of litigating, [the EAJA] helps assure that administrative decisions reflect informed deliberation.

*Jean*, 496 U.S. at 165 n. 14, 110 S.Ct. at 2322 n. 14 (quoting S.Rep. No. 96–253, at 7 (1979)). Indeed, a denial of fees would act as a deterrent to litigation especially where, as here, the cost of litigation exceeds the amount in controversy. But we agree with the now-defunct Administrative Conference of the United States, *see* 60 Fed.Reg. 56,312 (1995) (the "Administrative Conference is closing its doors on October 31, 1995"), that the "clear implication of the purpose clause of the Act, combined with its legislative history, is that litigants should not be forced to pay fines or otherwise settle litigation with the government when their legal position is sound, simply because the amount at stake is less than the cost of litigation." Equal Access to Justice Act: Agency Implementation, 46 Fed. Reg. 32,900, 32,904 (1981). Wilson has incurred attorney fees and expenses within the meaning of EAJA.

4. It is Wilson's exposure to increased premiums and our view that it effectively incurred attorney fees by prepaying them via its premium payments that distinguishes this case from *Comserv* and *Wall Industries, Inc. v. United States,* 15

*Conclusion*

Accordingly, the decision of the General Services Administration Board of Contract Appeals is affirmed-in-part, reversed-in-part, and the case is remanded for further proceedings consistent with this opinion.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*

Cl.Ct. 796 (1988), *aff'd,* 883 F.2d 1027 (Fed.Cir. 1989) (table), upon which the government primarily relies. Neither of these cases binds us at any rate.