Waldemar **WASNIEWSKI**, Petitioner,

v.

Monika **GRZELAK–JOHANNSEN**, Respondent.

Case No. 5:06–cv–02548.

United States District Court, N.D. Ohio.

March 20, 2008.

Alycia N. Broz, Marjorie Frazier Amerine, Vorys, Sater, Seymour & Pease, Columbus, OH, for Petitioner.

Ronn J. Gehring, Jill Friedman Helfman, Taft, Stettinius & Hollister, Cleveland, OH, Gary J. Gottfried, Columbus, OH, for Respondent.

## ORDER AND OPINION

[Resolving Docs. Nos. *100, 110, 113.*]

JAMES S. GWIN, District Judge:

Before the Court is Magistrate Judge James S. Gallas's Report and Recommendation [Doc. *113.*] addressing Petitioner Waldemar Wasniewski's ("Wasniewski") motion and supplemental motion for attorney fees and costs. [Docs. *100, 104, 110, 112.*] Respondent Monika Grzelak-Johannsen ("Johannsen") opposed both motions. [Docs. *102, 105, 111.*] Neither party objected to the Magistrate Judge's Report and Recommendation.

For the reasons described below, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Gallas and **GRANTS** in part and **DENIES** in part the Petitioner's motions for attorney fees and costs.

### I. Background

On August 15, 2007, 2007 WL 2344760, this Court granted Wasniewski's petition for the return of his thirteen-year-old child, Pawel Wasniewski, to Poland following Johannsen's wrongful removal of Pawel to the United States. [Doc. *89.*] On that same day, the Court ordered the Petitioner to file a motion for attorney fees and costs by August 28, 2007. [Doc. *90.*]

On August 28, 2007, the Petitioner filed his motion for attorney fees and costs. [Doc. *100.*] The Respondent opposed the motion [Doc. *102.*], the Petitioner replied [Doc. *104.*], and the Respondent filed a sur-reply [Doc. *105.*]. On December 5, 2007, the Petitioner filed a supplemental motion for attorney fees and costs. [Doc. *110.*] The Respondent again opposed [Doc. *111.*], and the Petitioner again replied to the opposition [Doc. *112.*].

On September 14, 2007, the Court referred the Petitioner's requests for attorney fees and costs to Magistrate Judge

James S. Gallas for a Report and Recommendation. [Doc. *103*.] After conducting a thorough analysis of the Petitioner's motions and the Respondent's oppositions, on February 29, 2008, Magistrate Judge Gallas recommended that this Court grant in part and deny in part the Petitioner's motions for attorney fees and costs:

> It is recommended that petitioner's motion for attorney fees and costs (ECF # 100) be granted under 42 U.S.C. § 11607(b)(3) for a total award in the amount of $117,890.73 to be paid by respondent directly to petitioner's counsel, Vorys, Sater, Seymour and Pease LLP, at their office in Columbus, Ohio. It is further recommended that petitioner's supplemental motion (ECF # 110) be denied except for allowance of an amount for fee litigation consistent with the dictates of the Sixth Circuit.

[Doc. *113 at 25*.]

Neither party objected to the Report and Recommendation.

## II. Legal Analysis

The Federal Magistrates Act generally requires a district court to conduct a *de novo* review only of those portions of the Report and Recommendation to which an objection has been made. *See 28 U.S.C. § 636(b)(1)*. Parties must file any objections within ten days "after being served with a copy" of the Report. *Id.* They waive their right to appeal the Recommendation if they fail to object within the time allowed. *See, e.g., Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

In the specific context of attorney fees, the Sixth Circuit has recently held:

> After being presented with the Magistrate Judge's report and recommendation, the district court must then conduct a de novo review of the findings and issue an order as it sees fit. The district court cannot simply "concur" in

the magistrate's findings, but it must conduct its own review in order to adopt the recommendations.

*McCombs v. Meijer, Inc.,* 395 F.3d 346, 360 (6th Cir.2005) (citations omitted).

In the instant case, on February 29, 2008, Magistrate Judge Gallas issued a Report and Recommendation. [Doc. *113* ] More than ten days have passed, and neither party has objected to his Recommendation. Having conducted its own *de novo* review of the filings, the Court agrees with the conclusions of Magistrate Judge Gallas and adopts the Report and Recommendation as its own. Therefore, the Court incorporates Magistrate Judge Gallas's findings of fact and conclusions of law fully herein by reference.

## III. Conclusion

For the reasons discussed above, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Gallas and **GRANTS** in part and **DENIES** in part the Petitioner's motions for attorney fees and costs.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (Regarding ECF # 100, 110)

JAMES S. GALLAS, United States Magistrate Judge.

The matter referred to the undersigned is the motion for attorney fees and costs under the International Child Abduction Remedies Act (ICARA) (ECF # 100, 103). On August 15, 2007, this Court entered judgment in a Hague Convention child abduction matter and ordered the child's return to Poland by August 29, 2007. (Opinion & Order of 08/15/2007, ECF # 89). In a Supplemental Order, this Court ordered petitioner Waldemar Wasniewski ("Petitioner") to file a motion for attorney fees and costs pursuant to 42 U.S.C. § 11607(b)(3) by August 28, 2007. (Supplemental Order of 08/15/2007, ECF # 90).

In accordance with this order, petitioner timely submitted his Motion for Attorney Fees and Costs.

### 42 U.S.C. § 11607(b)(3):

The Congress of the United States has decreed that:

Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3).

### *Settlement of Child Custody Matter:*

Respondent relates that the child was returned to Poland on September 1, 2007 and on September 7, 2007 petitioner and respondent entered into an agreement under which petitioner granted permission for the child to live permanently with the mother in the United States and in exchange respondent provided petitioner with monetary benefits including releasing claims on the house title, forgiving petitioner's debt, and agreeing to pay all the child's living, health care and educational expenses in the United States. This agreement was memorialized in a written agreement executed on September 18, 2007. The child was returned to the United States on September 19, 2007. (See Respondent's Memorandum in Opposition, p. 1–2, ECF # 111).

Respondent maintains that no attorney fees should be awarded in this matter because she was always ready and willing to settle the child custody issue and that she

and the petitioner, without the assistance of the United States counsel, agreed that it would be in the child's best interest to live in the United States with his mother. The undersigned notes that the settlement agreement entered into on September 18, 2007 evidences no judicial acceptance and due to unfamiliarity with Polish law on child custody, it cannot be certain that this agreement is acceptable under Polish law to finalize the parental disputes.[1]

Respondent appears to raise an argument supporting the position that an order requiring respondent to pay "necessary expenses ... would be clearly inappropriate." See 42 U.S.C. § 11607(b)(3). Respondent's argument that she was always ready and willing to compromise is belied by her acts, however. As the court found in its opinion and order, after the Polish courts had awarded custody to the child's maternal grandparents, respondent traveled to the United States with the child without prior notice to the Polish courts or the petitioner. (Opinion and Order, p. 2, ECF # 89). This occurred after respondent was denied permission by the Polish family court to bring the child to the United States. *Id.* Further this court noted the respondent had made efforts to secrete the child's location from petitioner and following this decision in this matter on August 16, 2007, respondent filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit and an emergency motion to stay with the district court and with the United States Supreme Court. (See Notice of Appeal and Emergency Motion, ECF # 92, 93). According to petitioner, the motions for stay were denied and the child was returned to Poland. Further, the Sixth Circuit had originally ordered respondent's/appellant's brief to be filed by October 9, 2007 but

---

1. Hopefully this will put an end to the child custody dispute and not be the seed for another round of ICARA proceedings.

respondent moved for extension of time (See Petitioner's Ex. B and C, ECF #112). After the parties resolved their custody dispute, the appeal before the Sixth Circuit was dismissed on October 23, 2007 (Petitioner's Ex. D). However this series of reprisals refutes respondent's claim that her willingness to settle should obviate the need to address the pending motion for attorney fees and costs. An order awarding necessary expenses incurred or on behalf of the petitioner is clearly appropriate.

### Pro bono publico representation:

Respondent argues because petitioner's counsel represented him *pro bono publico,* there can be no recovery of "necessary expenses incurred by or on behalf of the Commissioner," since no legal fees were "incurred." In so arguing, respondent concedes in general that a prevailing party's representation by *pro bono publico* counsel does not in all instances negate the "incurred" element of entitlement to a fee award. Respondent contends, however, that the fees are "incurred" only when there is an express or implied agreement that the fee will be paid over to counsel, citing *Phillips v. General Services Administration,* 924 F.2d 1577, 1583 (Fed. Cir. 1991), and respondent stresses that there is no evidence of any such agreement. Respondent follows up this argument referring to Ohio's contingent fee agreement statute, Ohio Rev.Code § 4705.15 which requires the contingent fee agreement to "be reduced to writing and signed by the attorney and the client." Ohio Rev.Code § 4705.15(B). The juxtaposition of these two arguments evidences the problems created by the requirement in *Phillips*

that there must be a "an express or implied agreement." *Id.* at 1583. This is not to say that *Phillips* enjoys some currency. *Phillips* was recently cited by the Sixth Circuit in the unreported decision of *King v. Commissioner of Social Security,* 230 Fed.Appx. 476, 481 (6th Cir.2007). However in *King,* the decision's emphasis was on the last part of the phrase that the fee award will be "paid over to the legal representative." *King,* 230 Fed.Appx. at 481, quoting *Phillips,* 924 F.2d at 1583.

*Phillips,* moreover, involved a contingent fee arrangement so there was no true *pro bono publico* relationship between counsel and client. *Id.,* 924 F.2d at 1579; and see *In re Seay,* 369 B.R. 423, 429–30, 100 A.F.T.R.2d 2007–5378 (Bankr. E.D.Ark.2007) (noting *Phillips* as an example of the contingent fee agreement). *Phillips* was revisited by the Federal Circuit in *Ed. A. Wilson, Inc. v. General Services Administration,* 126 F.3d 1406 (Fed. Cir.1997), in the matter involving the question whether attorney fees were "incurred" when an insurer is responsible for paying them, and the decision stated that the attorney-client relationship was sufficient to create counsel's entitlement to fees. *Id.,* 126 F.3d at 1408. A more conservative position, though, was taken in *Preseault v. United States,* 52 Fed. Cl. 667 (2002), criticizing the "suggestion" in *Ed A. Wilson, Inc.* that *Phillips'* standard was open to debate. *Id.,* 52 Fed. Cl. at 673 n. 5. Again as in *Phillips* there was a contingent fee arrangement before the court as the court conceded that, "[t]his case does not present the classic *pro bono* legal agreement; although Mr. Preseault used the term *'pro bono*[.]'" *Id.* at 675.[2] The

---

**2.** *Preseault* acknowledged that another panel of the federal circuit in *Ed A. Wilson, Inc.* "suggested that the proper standard was open to debate[.]" *Preseault,* 52 Fed. Cl. 667 n. 5. That decision cited the other circuit precedent from *Watford v. Heckler,* 765 F.2d 1562, 1567

n. 6 (11th Cir.1985) and *Cornella v. Schweiker,* 728 F.2d 978 (8th Cir.1984) which held simply that fees are "incurred" when the prevailing party is represented by a legal services organization or counsel appearing *pro bono. Ed A. Wilson, Inc.,* 126 F.3d at 1409. As the

rationale of both *Phillips* and *Preseault* conflate contingent fee arrangements with *pro bono publico* representation. Both decisions conceded that a *pro bono* fee agreement was not before the court and there is certainly no need to eliminate the separate concept of *pro bono publico* to merge it with a contingent fee agreement. *Phillips* raises the question whether there is any difference between counsel's representation *pro bono publico* as opposed to a contingent fee arrangement.

▮▮▮▮ What underlies the express or implied agreement that the client will pay over the fee award is the fear that petitioner will retain the attorney fee award as his own. The motion for fees was prepared by petitioner's counsel, so there is no possibility that petitioner would receive a fee without counsel's knowledge. Petitioner cannot collect a fee at all unless there is an attorney-client relationship. See *Ed A. Wilson, supra; Kay v. Ehrler,* 499 U.S. 432, 435–37, 111 S.Ct. 1435, 1437, 113 L.Ed.2d 486 (1991). Counsel has a right to the fees collected based on statutory fee-shifting that exists independent of any express agreement. See *United States ex. rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc.,* 89 F.3d 574, 577–79 (9th Cir.1996). In fact any concern over whether petitioner would be unjustly enriched by retaining the fee award can be remedied by payment directly to counsel. See *Virani; King v. Commissioner of Soc.*

*Sec.,* 230 Fed. Appx. at 481. As under the Equal Access to Justice Act, which also speaks to "fees incurred," attorney fee awards "are payable to the attorney; they are awarded for the benefit of the party, but the money is not the party's to keep." *King,* 230 Fed. Appx. at 481. Since respondent insists on an express or implied agreement, the implied agreement can be said to exist as a matter of law.[3] This element of fees "incurred" can be deemed to exist as a matter of law despite the language barrier that existed between counsel and client, and the lack of evidence that petitioner had any familiarity with the legal system and the attorney-client relationship as it exists in this country. Respondent's efforts to criticize petitioner for not having a written contingent fee agreement, moreover, are immaterial.[4]

***Calculation of Reasonable Attorney Fees, Methodology:***

Petitioner seeks a total of $225,299.68 incurred on behalf of him by the law firm of his attorneys, Vorys, Sater, Seymour & Pease, LLP (Supplemental motion p. 6–7, ECF # 110). Petitioner has chosen to use the lodestar approach of computing a purported amount of reasonable attorney fees based on the hours expended at allegedly reasonable rates. ICARA does not speak to the method of computation of "necessary ... legal fees." However, respondent accedes to this methodology. (See Respondent's Memorandum, p. 7, ECF # 102).[5]

---

court stated, "the presence of an attorney-client relationship suffices to entitle prevailing litigants to receive the awards." *Id.,* citing *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3rd Cir.1977).

3. Due to respondent's argument it is noted that petitioner has returned to Poland. For this reason it is suggested that any court-ordered award of attorney fees, costs and expenses be made payable directly to petitioner's counsel here in the United States.

4. By its own terms, Ohio Revised Code, § 4705.15 does not apply to this matter because it is limited to "tort actions for injury, death or loss of person or property." Secondly, this statute concerns matters of state law which would be applicable if the attorney fees at issue were being awarded under state statute. Compare *Foodtown, Inc. of Jacksonville v. Argonaut Ins. Co.,* 102 F.3d 483 (11th Cir.1996) (oral agreement violated Florida statutory requirement that contingent fee agreement be in writing).

5. Although the 1st Circuit in *Aldinger v.*

The lodestar method of computation is a fee calculated in terms of the reasonable hours of service at a reasonable rate and is the fairest and most manageable approach to determine an award of attorney fees. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439, 455–56 (1986); *Blanchard v. Bergeron,* 489 U.S. 87, 89 n. 2, 109 S.Ct. 939, 942 n. 2, 103 L.Ed.2d 67 (1989); *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir.1979) *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *United States v. General Electric Co.,* 41 F.3d 1032, 1048 (6th Cir.1995). The moving party must submit evidence supporting the hours worked and the rates claimed. *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. Where the documentation is inadequate, the court may reduce the award accordingly. *Id.* Hours claimed may be cut for duplication, padding, or frivolous claims. *Northcross,* 611 F.2d at 637; *Coulter v. State of Tennessee,* 805 F.2d 146, 150–51 (6th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). The goal is to not overcompensate counsel with a "liberal" fee, but to award the "reasonable" fee necessary to encourage competent lawyers to undertake the representation. *Coulter,* at 149; *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999).[6]

### Reasonable Rate:

■ Petitioner requests $250.00 per hour graduating to $275.00 per hour for the work performed by Alycia N. Broz, $170.00 per hour graduating to $190.00 per hour for the work performed by Marjorie Frazier Amerine, $180.00 per hour for the work performed by Andrea L. Ebreck and $180.00 per hour for the work performed by Tyler B. Pensyl. The moving party must submit evidence supporting the hours worked and rates claimed. *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. To establish the "customary fee":

> ... the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); and see *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G & M Roofing and Sheet Metal Co., Inc.,* 732 F.2d 495, 501 (6th Cir.1984) (applying civil rights lodestar approach to determination of a reasonable fee in FLSA context). In most cases, though, the relevant community rates will be the "local market rates."

---

*Segler,* 2005 WL 3116540 (1st Cir.2005) bypassed the opportunity to resolve this question of whether the lodestar method is required, the cases that have addressed this matter have extended the general methodology for applying the lodestar approach as it is familiarly applied in other types of federal fee-shifting statutes. See *Freier v. Freier,* 985 F.Supp. 710, 712 (E.D.Mich. 1997); *Distler v. Distler,* 26 F.Supp.2d 723, 727 (D.N.J.1998); *Friedrich v. Thompson,*

1999 WL 33951234 at *3 (M.D.N.C.); *Flynn v. Borders,* 2007 WL 862548 at *2 (E.D.Ky.).

**6.** No hearing was conducted since the parties chose to submit the matter on a series of briefs, affidavits and supporting exhibits. Under these circumstances no hearing is required. See *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1402 (6th Cir.1995).

*Wayne v. Village of Sebring,* 36 F.3d 517, 533 (6th Cir.1994), *cert. denied,* 514 U.S. 1127, 115 S.Ct. 2000, 131 L.Ed.2d 1001 (1995).

Counsel's normal billing rates are generally "a key focal point" in determining the correct hourly rate and this rate provides the "reasonable point of departure" for determining the market value hourly rate. *James v. Runyon,* 868 F.Supp. 911, 913 (S.D.Ohio 1994); *Kelley v. Metropolitan County Bd. of Ed.,* 773 F.2d 677, 683 (6th Cir.1985). As explained in *Northcross,* "[t]he attorney's normal hourly billing rate reflects 'the skill requisite to perform the legal service properly', 'the customary fee', and 'the experience, reputation and ability of the attorney.'" *Northcross,* 611 F.2d at 642.

Attorney Broz states that her $250.00 per hour rate and the other counsel rates requested in her affidavit are counsel's regular hourly charges. Respondent counters with the affidavit of John D. Zoller regarding petitioner's legal fees and costs. (See Respondent's Memorandum, Ex. B, ECF # 102–3). Attorney Zoller relates that he has been practicing family law for 21 years and has handled many cases involving international child custody issues under the Hague Convention including a recent matter in the Northern District of Ohio. *Id.* Attorney Zoller states his standard billing rate for representing Hague Convention cases is $250.00 per hour and that this is the standard rate in northeastern Ohio for an attorney experienced in Hague Convention proceedings which petitioner's counsel are not. He explains that petitioner's counsel lacked experience including lead counsel Attorney Broz who has no experience in Hague Convention matters but her expertise lies in the field of labor and employment law. As for the remaining counsel in the case, Attorney Zoller points out that they have not been practicing for even five years and also lack experience in Hague Convention cases. In

his expert opinion he sets out the following as reasonable rates:

| | |
|---|---|
| Attorney Broz | $175.00 per hour |
| Attorney Amerine | $150.00 per hour |
| Attorney Ebreck | $140.00 per hour |
| Attorney Pensyl | $130.00 per hour |

*Id.,* Affidavit at § 9–10.

■ Petitioner in his reply memorandum counters that Attorney Broz is not merely a labor and employment associate but has nine years of litigation experience in federal court and further that Attorney Pensyl has worked on other Hague Convention cases and is currently so engaged in another Hague Convention matter. Petitioner also seeks to justify the requested rates referencing *Kufner v. Kufner,* 2007 WL 1521248 (D.R.I.) where counsel's top billing rates were cut from $700.00 per hour to $300.00 per hour. Given that the *Kufner* case involved litigation in Rhode Island, it is not exactly "satisfactory evidence" to show that the requested rates are in line with those prevailing in the community for similar services. Petitioner's reply memorandum included his own expert, Attorney Hugh E. McKay, a partner at Porter, Wright, Morris & Arthur, LLP, who was obtained to offer his expert opinion concerning the reasonableness of the rates requested by petitioner. See Petitioner's Reply Memorandum, Ex. 1, ECF # 104–2. However, when it comes down to this battle of the experts, it is Attorney Zoller who has more familiarity with Hague Convention cases as opposed to Attorney McKay's familiarity with litigation in general. Accordingly, the undersigned will utilize the reasonable rates for Hague Convention cases in the Cleveland area according to Attorney John Zoller. This decision acknowledges the fact that Attorney Pensyl has rebutted Attorney Zoller's assumption that he lacked prior Hague Convention case experience. Attorney Pensyl is the only counsel of petitioner with direct experience, yet he was

considered by Attorney Broz to be entitled to the smallest hourly amount. Consequently Petitioner fails to provide satisfactory evidence to support the rates requested, and respondent's presentation is most closely tied to prevailing community rates. This is not to say that petitioner's counsel's normal rates are unreasonably high. However in this circuit there is a rule regarding renowned counsel:

Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate. We therefore apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to under the representation in question.

*Coulter v. State of Tenn.*, 805 F.2d at 149; and see *Adcock–Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Wayne v. Village of Sebring*, 36 F.3d at 531–32.

### Reasonable Hours:

■ The primary consideration will be whether the hours sought for the time expended represent reasonable billing judgment as in the situation between counsel and client. The court must be guided by the reasonable practices of the profession when determining whether a party has used poor billing judgment for hours spent on the case. *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990); *Wayne v. Village of Sebring*, 36 F.3d 517 at 532. As related in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), in determining an appropriate fee award using the lodestar approach, "[i]n the private sector 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly charged to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Id.* at 434, 103 S.Ct. 1933, citing *Copeland v. Marshall*, 641 F.2d 880, 205 U.S.App. D.C. 390, 401 (1980) (emphasis in original).

### Counsel's Hours through August 15, 2007:

Petitioner submitted a billing statement through August 15, 2007 indicating the total amounts of time expended by the four attorneys in this matter with the timely filed motion for attorney fees and costs. A supplemental motion for attorney fees and costs commencing with fees and costs incurred from August 15, 2007 and later submitted on December 5, 2007 (See ECF # 110).

Requested Hours through August 15, 2007 in the timely filed motion:

| | |
|---|---|
| Attorney Broz | 252.53 |
| Attorney Amerine | 198.20 |
| Attorney Ebreck | 100.75 |
| Attorney Pensyl | 187.90 |

This billing statement also includes a minimal amount of time for Ms. Klingbeil and Ms. Moyer, but there is no mention of them in Attorney Broz' affidavit in the motion for attorney fees and costs (See ECF # 100). Accordingly, the issue of reasonableness of the time expended will be limited to the four individuals identified in the table above.

*Fee Amount per se unreasonable:*

Respondent begins by arguing that the fees requested are totally out of line. Respondent points to such cases as *Whallon v. Lynn*, 2003 WL 1906174 (D.Mass.) where a fee in the neighborhood of $65,000 in a Hague Convention case was "startling high" and in several other cases in which fee awards have been made in the neighborhood of low five figure amounts or less.[7]

---

7. E.g., *Lebiedzinski v. Crane*, No. A03–0248– CV–JKS, 2005 WL 906368, at *4 (D.Alaska

Petitioner counters with *Kufner* case including a fee request in the neighborhood of $1,000,000, which reduced by the court to a fee in the neighborhood of a quarter million dollars. *Id.*, 2007 WL 1521248 at *3. These arguments do not track the lodestar approach for a fee determination, but rest on the arbitrary selection of other cases which may or may not be accurate comparators. This argument does not demonstrate whether or not the fees requested by petitioner represent reasonable billing judgment.

*Redaction:*

Respondent complains that the 24–page billing statement contains redactions to numerous entries that hide information about the subject matter. Respondent points to several descriptions of work performed by counsel as "analysis of ..." "preparation ...," "communication ...," "review of ...," "attention to ..." and several time entries that are completely redacted.

Petitioner responds claiming that respondent's argument fails to recognize the fact that the bills were redacted to preserve the attorney-client privilege and attorney work-product protection, which petitioner does not wish to waive. Petitioner offers, without waiving the privilege, to provide the court with unredacted copies of billing statements for the court's *in camera* review.

There should be no need for the court to concern itself with attorney-client privilege or any other form of protection. Time records must be presented to the court in a way that "will enable the reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. Further-

more the alternative of *in camera* review of an unredacted statement is equally unattractive because it interjects an element of *ex parte* review in this matter and deprives respondent of an opportunity to raise arguments. Itemized time entries certainly can be presented in a format which does not infringe on attorney-client privilege or other protection without need for redaction.

Respondent states that review of the time sheets reflects that the description of more than 440 hours of time, nearly 60% of the time entries on the bill, had been totally or partially redacted. Respondent argues that the court should apply this reduction to the number of hours at the rate of the second highest associate. This is obviously an oversimplification. The particular counsel who provided the service is clearly identified in the billing statement. In any event respondent's challenge is unsuccessful because most entries, albeit redacted, provide sufficient information to ascertain the subject matter of the time expenditure.

The Sixth Circuit has recently addressed this situation holding that while "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended ..." "explicitly detailed descriptions are not required." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 554 (6th Cir.2008) citing *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n. 2 (6th Cir.1984); *McCombs v. Meijer, Inc.*,

Apr. 13, 2005) (awarding $26,877.96 in legal fees); *Antunez–Fernandes v. Connors–Fernandes*, 259 F.Supp.2d 800, 817 (N.D.Iowa 2003) (awarding $7,531.50 in legal fees); *Distler*, 26 F.Supp.2d at 727 (awarding $8,894.20 in legal fees); *Freier*, 985 F.Supp. at 712 (awarding $12,112.50 in legal fees);

*Berendsen v. Nichols,* 938 F.Supp. 737, 739 (D.Kan.1996) (awarding $4,462.50 in legal fees after reducing the requested award due to the respondent's strained financial situation); *Flynn v. Borders,* 2007 WL 862548 (awarding $8,295.50).

395 F.3d 346, 360 (6th Cir.2005); and see *Anderson v. Wilson*, 357 F.Supp.2d 991, 999 (E.D.Ky.2005). Accordingly, where the fee statement is a computerized calendar indicating the dates, times of work in tenths of an hour and some identification of the specific task then the court can determine with a high degree of certainty that the hours were actually expended.

As for the reasonableness of the hours, *Imwalle* states that counsel's billing statement must be real in context with the timeline of the litigation. *Id.*, at 553–54. This implies that if the brief description can be traced to contemporaneous activity as indicated by the docket then even the "briefest description" can be evaluated for its reasonableness. In other words *Imwalle* explicitly requires the court not to limit itself to the four corners of the billing statement in ascertaining whether the hours claimed by counsel are reasonable. Accordingly descriptions of work performed as " 'Conference with,' 'Research,' 'Review of file,' 'Review documents,' " may be sufficient to establish the reasonableness of the hours. See *Imwalle*, at 552–53.

Upon review of the billing, the undersigned finds no reductions are necessary for Attorney Amerine. However, with respect to Attorney Broz, her fee request will be reduced by:

4 hours for the entry of May 11, 2007

0.5 hour for the entry of June 15, 2007

0.33 hour for the entry of August 7, 2007,

for totally obliterated descriptions. No reduction is required for the hours expended by Attorney Ebreck for research, identified as "Review of" or "Review of relevant authority." Likewise, there will be no reduction due to redaction of Attorney Pensyl's hours. Since the court is not limited to the four corners of the billing statement, the description can be matched to the timeline of the litigation to ascertain the reasonableness of the hours listed.

But for a few reductions for Attorney Broz, redaction does not disable the ability for review of the entries of reasonableness.

*Overstaffing and Duplication:*

Respondent argues that the time each attorney billed for attending the same conference was redundant and duplicative and no fees should be awarded for duplicative time. This argument runs counter to the position taken in *Glover v. Johnson*, 138 F.3d 229, 252–53 (6th Cir.1998). The circuit has found that in complex cases an amount of consultation may be reasonable and it is up to the complaining party to specifically establish that it is not. *Id.* Granted it is possible that the small percentage of the total hours to eliminate duplication of services could be considered. *Id.*; and see *Northcross*, 611 F.2d at 636–37. However respondent does not set forth specific objections to establish a reduction for duplication of effort as unreasonable billing judgment beyond what is customary in this market.

■ Respondent next cites specific instances of alleged unnecessary multiple billing. Part of this time concerns several pretrial conferences held with the court. Petitioner relates though that while respondent wishes to limit the hour to a single attorney for petitioner, respondent had at least two attorneys attending the pretrial conferences. Likewise respondent objects to the presence of multiple attorneys at depositions yet as petitioner states respondent also was represented by multiple counsel at these depositions. There is no better evidence for reasonable billing judgment when petitioner's counsel's actions are mirrored by respondents' counsel. This same argument holds true with respect to both respondent and petitioner having three attorneys present during trial. It is curious that respondent would claim that both parties having three attor-

neys participating at trial was "clearly overkill." [8]

Respondent goes on to argue that petitioner filed overly verbose motions, spent unreasonable time drafting and revising responses to respondent's discovery request, and finally, respondent contends that petitioner's counsel should receive a reduced rate for driving or travel time.

■ Respondent, though, has not offered proof that counsel's billed amount for travel time is reduced in any market. Not even respondent's expert, Attorney Zoller, stated that counsel in this market do not bill for or reduce their time expended for travel.

■ Other than complaining that the motions were overly long, respondent fails to mention that the motions, for the most part, were successful. Respondent contends that these were "unnecessary legal tactics" but they were not. Rather these motions focused the issues for trial, so trial could be concluded within several hours which ultimately restored the child to the temporary custody of petitioner. Most motions played a role in petitioner's ultimate success and further petitioner refers to the affidavit from Attorney McKay which affirms the reasonableness of the hours expended on the motions. With regard to the time expended in discovery, petitioner points out that respondent's first set of requests for production of documents, requests for admissions and interrogatories consisted of 71 separate requests, 25 interrogatories, 27 requests for production and 19 requests for admission followed by a second set of requests. In order to respond, petitioner had to obtain the relevant documents from Poland and obtain translations which took considerable time and effort.

Respondent next objects to 5.75 hours expended for review and review of a "secret" memorandum. (See Invoice p. 14). A quick referral to the docket shows that on June 6, 2007 petitioner filed his opposition to respondent's motion for the court to select guardian *ad litem.* (See ECF # 42). Respondent should have been clued into this "secret" by the preceding June 5, 2007 itemized entry which read "Draft response to defendant's motion to appoint a guardian *ad litem.*" As the court's June 15 order relates, both parties agreed to appointment of a guardian *ad litem* for the child and the court imposed additional criteria that the parties agree that such counsel would act in dual roles as both guardian and the child's attorney (Order, ECF # 36, 46). Petitioner came forward with candidates which respondent opposed. The court had to intercede and appoint Attorney David Michalski, a partner at Hahn, Loeser & Parks, LLP, to serve *pro bono publico.* Clearly, respondent did not prevail in this matter due to her unwarranted opposition to what should have been an administrative matter.

Respondent next takes issue with petitioner's motions *in limine.* Petitioner counters that the court granted the motion to limit the testimony of Rolland Johannsen, granted the motion to exclude the testimony of Bagdan Grzelak, did not exclude, but limited the testimony of respondent's expert Dr. Cottem, and granted petitioner's motions to exclude testimony of abuse. As petitioner states, respondent has no basis to claim that these motions were not germane to achieving the favorable resolution of this action.

Respondent next objects to the 41.95 hours spent in drafting petitioner's post-trial brief including the proposed findings

---

8. Petitioner also criticizes respondent's arguments as unfair regarding Attorney Ebreck's attendance at deposition. Petitioner points out that while this attorney did attend a deposition, Attorney Ebreck did not bill for this time.

of fact. (See Billing statement pp. 21–23.) According to respondent's expert, Attorney Zoller states that competent counsel should have been able to draft this post-trial brief in less than 20 hours (Respondent's Memorandum in Opposition, Ex. B, ¶ 25). Review of the 22 page document, though, reveals that it was the result of a carefully combed record and a thorough review of the applicable case law. That memorandum could not have been prepared in a mere 20 hours. Accordingly, the time expended in these motions was both reasonable and its inclusion constitutes reasonable billing judgment, and so no reduction will be made.

*Clerical Tasks:*

Respondent claims that the hours expended by petitioner's counsel are excessive due to inclusion of clerical tasks. Petitioner responds that the entries cited by respondent total 3.67 hours of work and essentially petitioner has no objection to this minimal reduction. However, this was not the end of the discussion. As respondent points out, it is likely that the additional clerical work is contained in redacted time entries. Moreover, what is strikingly unusual about the billing statement submitted is that the time expended by the two paralegals is so minimal that Attorney Broz did not even bother to mention it in her affidavit. This case represents the fruition of the prediction from *Missouri v. Jenkins* that, "it would not be surprising to see a greater amount of such work performed by attorneys themselves, thus increasing the overall cost of litigation[,]" because fee applicants must bill for lesser rate for paralegal time. *Id.*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2472 n. 10, 105 L.Ed.2d 229 (1989). However the court took the opposite position in *Missouri v. Jenkins* not to open the door to billing at counsel's rates when secretarial duties were performed. Respondent's concerns are well-founded due to the occasional appearance of administrative duties among counsel's time expenditures. Precedent dictates that "[d]ue to the relatively infrequent billing of such tasks at attorney rates, the Court deducts 2 % from the amount of the trial level fee request attributable to hours billed at attorney rates." *Cleveland Area Board of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1022 (N.D.Ohio 1997). Accordingly, there should be an overall reduction of 2% from counsel's hours expended through August 15, 2007.

***Attorney Fees and Costs After August 15, 2007:***

Petitioner filed his motion for attorney fees and costs as instructed on August 28, 2007, and in a footnote requested the right to recover fees and costs subsequently incurred (Motion for Attorney Fees p. 1, n. 1, ECF # 100). On December 5, 2007 petitioner presented his supplemental motion for attorney fees, which is opposed by respondent (See ECF # 110, 111). Petitioner's supplement incorporates counsel's statement of services and disbursements from August 15, 2007, for an additional request of $51,768.62.

First of all, petitioner provides no satisfactory explanation why counsel's services through August 28, 2007 were not timely included as instructed by the court. Second, there is an issue which although never directly confronted by respondent does require resolution and that is the proper tribunal for the award.

***Separate tribunals:***

42 U.S.C. § 11607(b)(3) reads that "[a]ny court" may issue the order as does the Equal Access to Justice Act which has been used as an analogy previously. Petitioner seeks fees during mid-August through October 2007 in connection with proceedings before the Sixth Circuit Court of Appeals and United States Supreme Court in addition to time sought for the

prosecution of the motion for attorney fees and costs.

■ The district court at this time can only consider the motion in regard to counsel's services and the costs related to the proceedings before the district court. Borrowing from the resolution of this issue concerning the Equal Access to Justice Act, the Sixth Circuit Court of Appeals and the United States Supreme Court are also "courts" and the fee application concerning the hours expended before these other tribunals should first be presented to those courts. See *McCarthy v. Bowen*, 824 F.2d 182, 183 (2nd Cir.1987); *Orn v. Astrue*, 511 F.3d 1217, 1218–21 (9th Cir. 2008).[9] It would be improper for the district court to resolve the question in the first instance whether the fees incurred for work on appeal were necessarily related to the return of the child for purposes of § 11607(b)(3). The fee application should be initially presented to the appellate court, which may then "enlist the aid of the district court in resolving disputed issues concerning an application for appellate fees, but the application should always be filed with the court of appeals so that the appellate court may determine whether the district court assistance is required." *McCarthy*, 824 F.2d at 183; and see *Orn*, 511 F.3d at 1220–21 setting forth a sequential list of factors for the panel to consider under 9th Cir. Civ. R. 39–1.6, 39–1.8 and 39–1.9.

### *Other "Necessary expenses":*

Petitioner makes this matter unnecessarily challenging. On page 23 of his billing statement attached to his August 28, 2007 motion for attorney fees and costs, petitioner supplies the following list of "disbursements":

| | | | |
|---|---|---|---|
| Travel | $ 757.44 | Court reporters/depositions | $ 2,675.60 |
| Color Copies | 181.00 | Mileage/parking | 142.74 |
| Courier service | 72.56 | Miscellaneous | 9.36 |
| Long distance tolls | 68.74 | Outside professional services | 4,821.88 |
| Court costs | 450.00 | Facsimile | 14.48 |
| Meals | 1,048.77 | Witness fee | 92.00 |
| Office copy/scan | 681.00 | On-line legal research | 7,046.64 |
| Totaling: | | | $18,062.21 |

(See Motion for Attorney Fees and Costs, Billing statement, Ex. 1 p. 23, ECF # 100–2).

Petitioner, though, requests "costs" in the amount of $17, 259.86 without any explanation for the disparity in the amount totals between this request and the listed amount of $18,062.21. Further, in his motion petitioner argues for $2,430.03 in travel costs, $1,238.52 in hotel costs, and $5,551.88 in "translation costs," but only $4,993.49 for "legal research" (Motion for Attorney Fees and Costs pp. 7–8, ECF # 100). These amounts cannot be reconciled with the exhibit presuming that outside professional services equates with translation costs and on-line legal research equates with legal research. Moreover, the docket in this matter indicates that the

---

**9.** Treatises on this issue on Federal Procedure, Lawyers Edition have noted disagreement by the Third Circuit. See 8 Fed. Proc. L.Ed. § 20:492 (Nov. 2007) noting *Garcia v. Schweiker*, 829 F.2d 396 (3rd Cir.1987). However, the Ninth Circuit in *Orn* pointed to a subsequent decision in the Third Circuit regarding the award of attorney fees under 42 U.S.C.1988 stating "Controlling precedent holds this Court can decide appellate attorney's fees applications ..." *Orn*, 511 F.3d at 1219, quoting *Yaron v. Twp. of Northampton*, 963 F.2d 33, 34 (3rd Cir.1992).

filing fee was $350.00, not $450.00 as requested.

Added to this confusion is petitioner's refusal to produce supporting documentation. Respondent harped on the lack of documentation in her original response but petitioner is his supplemental motion added only a second affidavit from Hugh McKay stating that the "costs billed by Vorys was and is both reasonable and necessary in order to adequately and properly protect Mr. Wasniewski's interests and to achieve Mr. Wasniewski's successful prosecution of his claim ..." (See Supplemental Motion, Affidavit ¶ 10, Ex. 2, ECF # 110–3).

To ask a rhetorical question, how can the court ascertain the amount of necessary expenses when their presentation is undocumented, lacking in mathematical accuracy and in conflict with what little can be verified from outside sources. Under these circumstances "necessary expenses" cannot be determined consistent with this discordant presentation except for the $350.00 filing fee.

However with respect to the personal expenditures of petitioner in the amount of $2,582.48 for airfare and hotel expenses, petitioner has supplied supporting invoices and counsel's affidavit on the value of the Polish złoty. (Motion for Attorney Fees and Costs, Ex. A, Ex. 2, ECF # 100–2). Respondent has not objection to the inclusion of these expenses. (See Reply, ECF # 102).

### Fees for litigation of request for fees:

In a recent reaffirmation of *Coulter, supra,* in *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610 (6th Cir.2007), the decision restated *Coulter*'s rule of limiting the preparation and successful litigation of a fee petition to three percent of the hours in the main case and five percent as the maximum where the main case involved a trial. *Id.,* at 620; *Coulter,* 805 F.2d at 151. Although the trial was of short duration, petitioner's counsel did expend a significant number of hours in preparation, so allowance of five percent would be more suitable.

### Summary:

To conclude, the rates proposed by respondent's expert are reasonable, 4.83 hours are deducted from the hours requested for work performed by Attorney Broz due to redaction, and there is a net increase in the hours requested of three percent to allow both for the two percent reduction for clerical tasks and the five percent increase for fee litigation, which computes to a reasonable fee for work performed by counsel in the amount of $114, 958.25:

| | | | |
|---|---|---|---|
| Attorney Broz | 247.70<255.13 @ | $ 175.00 = | $ 44,647.75 |
| Attorney Amerine | 198.20<204.15 @ | 150.00 = | 30,622.50 |
| Attorney Ebreck | 100.75<103.77 @ | 140.00 = | 14,527.80 |
| Attorney Pensyl | 187.90<193.54 @ | 130.00 = | 25,160.20 |

| | |
|---|---|
| Total Attorney fee award: | $114,958.25 |
| Necessary expenses incurred by counsel: | 350.00 |
| Necessary expense incurred by petitioner: | 2,582.48 |
| TOTAL: | $117,890.73 |

## CONCLUSION AND RECOMMENDATION

It is recommended that petitioner's motion for attorney fees and costs (ECF # 100) be granted under 42 U.S.C. § 11607(b)(3) for a total award in the amount of $117,890.73 to be paid by respondent directly to petitioner's counsel,

Vorys, Sater, Seymour and Pease LLP, at their office in Columbus, Ohio. It is further recommended that petitioner's supplemental motion (ECF #110) be denied except for allowance of an amount for fee litigation consistent with the dictates of the Sixth Circuit.

Dated: February 29, 2008