# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-5431(E)

KENNETH J. DELANO, JR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before ALLEN, MEREDITH, and LAURER, *Judges*.

# O R D E R

MEREDITH, *Judge*, filed the opinion of the Court. LAURER, *Judge*, filed a concurring opinion.

Pending before the Court is a March 13, 2023, application by the then-pro se appellant, Kenneth J. Delano, Jr., pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, for an award in the amount of $12,085.51.[1] In August 2023, the Court issued a single-judge order granting the EAJA application in part and dismissing in part. Of note, the Court awarded $423.95, including $307.76 for the estimated cost of gasoline to travel to a law library seven times by personal vehicle. The appellant filed a motion for reconsideration or, in the alternative, a panel decision. The Court granted the appellant's motion for reconsideration, withdrew the August 2023 order, and sua sponte submitted the case to a panel to consider whether, in exercising its discretion to determine the amount to reimburse a pro se litigant for travel expenses, the Court may rely on the actual expenses, such as for gasoline, or instead must use the Internal Revenue Service (IRS) standard mileage rate for business use of a private vehicle (business rate).

The appellant thereafter obtained counsel,[2] and the Court ordered the parties to file supplemental memoranda of law, held oral argument,[3] and required the appellant to file an amended itemization of the expenses and costs for which he seeks reimbursement. The Court now holds that, because the IRS business rate encompasses fixed and overhead-type costs, using that rate to calculate a pro se litigant's EAJA reimbursement for travel expenses would contravene controlling caselaw that limits such reimbursement to expenses that customarily would be charged by an attorney to a client and that are incurred solely and exclusively in connection with the litigation before the Court. Accordingly, for the reasons that follow, the Court will grant in part

---

[1] On June 10, 2024, in response to a Court order, the appellant filed an amended itemization in which he reduced to $11,465.86 the amount requested.

[2] After the Court requested that the Veterans Consortium Pro Bono Program respond to whether representation could be secured, current counsel entered an appearance on behalf of the appellant.

[3] The Court held oral argument at the annual convention of the National Association of County Veterans Service Officers in Denver, Colorado. The Court appreciates the Association's hospitality.

and deny in part the appellant's application for EAJA expenses. The Court will also dismiss the EAJA application to the extent that the appellant seeks costs pursuant to section 2412(a).

## I. BACKGROUND

On July 28, 2020, the pro se appellant filed an appeal of a November 15, 2019, Board of Veterans' Appeals (Board) decision that denied entitlement to a disability rating in excess of 30% for an eye condition. *See* Record at 13. He contended that the Board erred regarding his eye rating and failed to adjudicate a claim for a higher rating for a back condition. Appellant's Informal Brief (Br.) at 13, 19-27; Reply Br. at 5-14. The Court issued a single-judge decision vacating the Board's decision and remanding the matter of higher or separate ratings for the appellant's eye conditions for the Board to provide an adequate statement of reasons or bases. *Delano v. McDonough*, No. 20-5431, 2021 WL 5578501, at *1, *4 (Vet. App. Nov. 30, 2021) (mem. dec.). The Court also found that the appellant did not meet his burden of demonstrating that the Board erred in failing to address the appropriate rating for a back disability. *Id.* at *4-5. The appellant appealed the part of the Court's decision regarding the back disability, and the United States Court of Appeals for the Federal Circuit (Federal Circuit) subsequently dismissed the appeal. *Delano v. McDonough*, No. 2022-1694, 2022 WL 5239085 (Fed. Cir. Oct. 6, 2022). In March 2023, the appellant, prior to obtaining counsel, filed the EAJA application at issue here.

## II. LEGAL LANDSCAPE

EAJA is a fee-shifting statute that provides prevailing parties in certain civil actions against the United States with reimbursement for "fees and other expenses . . . . incurred by that party in [the] civil action." 28 U.S.C. § 2412(d)(1)(A). Pursuant to 28 U.S.C. § 2412(d)(1)(B), a party seeking an award of fees and other expenses must submit an application within 30 days after final judgment that includes the following: (1) a showing that the applicant is a "prevailing party"; (2) a showing that the applicant is "eligible to receive an award"; (3) a statement of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed"; and (4) an allegation that the position of the United States was "not substantially justified." 28 U.S.C. § 2412(d)(1)(B). The term "'fees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A). "The amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished." *Id.* "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### A. Fees for Pro Se Litigants

"Congress enacted EAJA . . . 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. REP. NO. 96-1005, at 9 (1980)). Specifically, Congress intended "to reduce the 'emphasi[s] . . . [on] the cost of potential litigation' in a party's decision whether to

challenge unjust governmental action." *Id.* at 417 (quoting H.R. REP. NO. 96-1005, at 7). This purpose is served "'by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States.'" *Starry Assocs., Inc. v. United States*, 892 F.3d 1372, 1384 (Fed. Cir. 2018) (quoting EAJA, Pub. L. No. 96-481, sec. 202(c)(1), 94 Stat. 2321, 2325 (1980)). Such an award helps "ensure adequate representation for those needing to vindicate their rights against the government." *Parrott v. Shulkin*, 851 F.3d 1242, 1249 (Fed. Cir. 2017). In 1992, Congress explicitly provided this Court with jurisdiction to award fees and expenses under EAJA, noting a concern that "a majority of cases [were] being brought pro se." S. REP. NO. 102-342, at 39 (1992); *see* H.R. REP. NO. 102-1006(*l*), at 25 (1992); *see also* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, sec. 506, 106 Stat. 4506, 4513.

In light of this purpose "to provide litigants with an incentive to retain counsel," a litigant representing himself or herself may not be awarded attorney fees under EAJA. *March v. Brown*, 7 Vet.App. 163, 167 (1994), *aff'd*, 74 F.3d 1260 (Fed. Cir. 1996); *see Naekel v. Dep't of Transp., FAA*, 845 F.2d 976, 981 (Fed. Cir. 1988) ("We conclude that . . . EAJA [does not] . . . authorize[] payment to Mr. Naekel for the time spent acting *pro se* in his appeal to this court."); *Cook v. Brown*, 6 Vet.App. 226, 231-33 (1994) (holding that the Court does not have jurisdiction to award EAJA attorney fees to nonattorney practitioners who are not supervised by an attorney), *aff'd*, 68 F.3d 447 (Fed. Cir. 1995). Indeed, in addressing a similar fee-shifting statute, the Supreme Court held that, even an attorney representing himself or herself is not entitled to attorney fees because it "would create a disincentive to employ counsel whenever . . . a plaintiff considered himself competent to litigate on his own behalf." *Kay v. Ehrler*, 499 U.S. 432, 438 (1991). Rather, "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.*; *see Haggart v. United States*, 38 F.4th 164, 168, 169 (Fed. Cir. 2022) (explaining that "[t]he rationale of *Kay* is not limited to [civil rights litigation], but has been applied to other fee provisions," and that *Kay* "categorically barred pro se litigants . . . from recovering attorney's fees for time spent pursuing their own cases"). Further, "[p]ayment to the *pro se* litigant for his/her own time expended on his/her own behalf does not serve an additional public purpose, and it can not be assumed that Congress intended such payment." *Naekel*, 845 F.2d at 980 (discussing the Back Pay Act); *see id.* at 981 (explaining that "the reasons discussed in connection with the Back Pay Act" also supported the conclusion that EAJA does not "authorize recovery of fees by *pro se* litigants").

All of this means that, in order to receive an award of fees under EAJA, there must be an attorney-client relationship. *See Kay*, 499 U.S. at 436 ("[I]t seems likely that Congress contemplated an attorney-client relationship as the predicate for an award . . . ."); *Haggart*, 38 F.4th at 170 (relying on *Kay* to conclude that "the word 'attorney' in the [Uniform Relocation Assistance and Real Property Acquisition Policies Act] indicates that Congress contemplated an attorney-client relationship for awarding fees"); *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1374-75 (Fed. Cir. 2002) (denying attorney fees under Rule 37 of the Federal Rules of Civil Procedure to a pro se litigant who was "both a lawyer and a computer consultant" seeking to compensate "the value of his time," because "the word 'attorney' connotes an agency relationship between two

3

parties"). Put simply, a pro se litigant "cannot 'incur' fees payable to oneself." *Id.* at 1375; *see id.* ("[T]here is no direct financial cost or charge associated with the expenditure of one's own time.").[4]

### B. Expenses for Pro Se Litigants

Although a pro se litigant may not receive an award of attorney fees under EAJA, he or she may receive an award for expenses. *Naekel*, 845 F.2d at 981 (noting that an award of expenses under EAJA "is not dependent on whether [the appellant] was representing himself"); *March*, 7 Vet.App. at 168 ("[A] pro se appellant may be eligible for an award of expenses . . . ."). In *Cook*, the Court explained that section 2412(d) "does not . . . limit 'expenses' awardable thereunder to those 'of attorneys'" and that "the weight of case law suggests that all 'legal expenses ordinarily arising in the course of providing legal services' to a client are recoverable under EAJA section 2412(d)(1)(A)." 6 Vet.App. at 238 (quoting *Oliveira v. United States*, 827 F.2d 735, 743 (Fed. Cir. 1987)).

However, a court may award a litigant "only those reasonable and necessary expenses . . . incurred or paid in preparation for . . . the specific case before the court, which expenses are those customarily charged to the client." *Oliveira*, 827 F.2d at 744; *see Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 585 (2008) ("'The Act should not be read . . . to permit reimbursement for items ordinarily included in office overhead, nor for any other expenses not reasonable in amount, necessary for the conduct of the litigation, and customarily chargeable to clients.'" (quoting S. REP. No. 98-586, at 14 (Aug. 8, 1984)) (emphasis omitted)). "[E]xpenses . . . that are not incurred or expended solely or exclusively in connection with the case before the court . . . cannot be awarded under the EAJA." *Oliveira*, 827 F.2d at 744; *see id.* at 744 n.27 (citing *Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985) (holding that an "award of costs for telephone calls, postage, air courier and attorney travel" are "costs that are ordinarily billed to a client" and are routinely awarded under fee statutes)). The appellant "has the burden of proving the validity of his expenses" and must provide "sufficient information to determine the reasonableness of [the requested] expense." *Cline v. Shinseki*, 26 Vet.App. 325, 331 (2013) (per curiam order) (denying reimbursement for travel expenses that were not supported by sufficient information), *overruled on other grounds by Smith v. McDonough*, 995 F.3d 1338 (Fed. Cir. 2021).

As for what expenses a lawyer would traditionally charge, it is well settled that "overhead costs[5] are not separately recoverable under EAJA and are [instead] recognized as a component of an attorney's fee." *Speigner v. Wilkie*, 31 Vet.App. 41, 48 (2019); *see Baldridge v. Nicholson*, 19 Vet.App. 227, 236 (2005) ("Because of the assumption that 'work done by librarians, clerical personnel and other support staff . . . [is] generally considered within the overhead component of a lawyer's fee,' costs for such work are not properly charged to the government under EAJA."

---

[4] In *Pickholtz*, the Federal Circuit acknowledged that the purpose of Rule 37—to deter misconduct in discovery—is different from the purpose of EAJA—to provide "an incentive for plaintiffs to retain independent counsel"—and that *Kay*'s prohibition on fees for pro se litigants was thus not applicable. 284 F.3d at 1375. The Federal Circuit's ultimate conclusion, however, rested on the general notion that "attorney's fees" cannot be "incurred," FED. R. CIV. P. 37(a)(5)(A), when a party is acting on his or her own behalf and no attorney-client relationship exists. *Pickholtz*, 284 F.3d at 1375.

[5] Such costs might include everything from "secretarial staff, janitors, and librarians, to telephone service, stationery, and paper clips." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 296 (1989) (Rehnquist, C.J., dissenting).

(quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 974 (D.C. Cir. 2004))). In other words, because a law firm is compensated for overhead costs through the attorney's hourly fee, allowing a separate EAJA award for overhead expenses would result in a double recovery. *See, e.g.*, *In re Wyche*, 425 B.R. 779, 795 (Bankr. E.D. Va. 2010) ("Counsel may not double-bill . . . for overhead expenses that have already been factored into the established hourly rate."). And, because a litigant may receive reimbursement only for expenses that are "customarily charged to the client," *Oliveira*, 827 F.2d at 744, a pro se litigant may not receive reimbursement for overhead expenses, *March*, 7 Vet.App. at 170. As a result, the Court has awarded to a pro se litigant "expenses for photocopying . . . , postage . . . , and transportation," but the Court has denied an award for "expenses for typewriter batteries . . . , typewriter ribbons . . . , and paper . . . because these are equipment-maintenance and overhead items of a type [that] would not normally be billed to a client." *Id.*

## C. Reimbursement of Travel Expenses

Generally, the Court has wide discretion in determining the reasonableness of fees and expenses requested under EAJA. *See INS v. Jean*, 496 U.S. 154, 163 (1990); *Chesser v. West*, 11 Vet.App. 497, 501 (1998). Additionally, "[t]he quantum and method of proof of each allowable expense is discretionary with the . . . court." *Oliveira*, 827 F.2d at 744. The instant case raises the question of whether the Court, in exercising its discretion to determine the reasonableness of requested travel expenses—specifically, the cost of driving a personal automobile to a law library—may rely on the actual expenses, such as for gasoline, or instead must use a government mileage rate.

By way of background, EAJA does not include a specific rate or method for reimbursing a litigant for use of a personal vehicle in connection with the litigation. *See* 28 U.S.C. § 2412(d). But the Federal Government, under other circumstances, reimburses employees, beneficiaries, and witnesses for the cost of driving their personal vehicles and allows tax deductions for individuals and military personnel for those costs. For example, VA reimburses certain veterans or other VA beneficiaries who travel to a VA facility for "vocational rehabilitation, [educational] counseling . . . , or . . . examination, treatment, or care." 38 U.S.C. § 111(a). The amount of the reimbursement is based on "the actual necessary expense of travel" or "in lieu thereof an allowance based upon mileage (at a rate of 41.5 cents per mile)." *Id.* Additionally, the IRS, under specific circumstances, allows a taxpayer who "use[s] [his or her] car for business, charity, medical or moving purposes . . . to take a deduction based on the mileage used for that purpose." *Standard Mileage Rates*, IRS, https://irs.gov/tax-professionals/standard-mileage-rates (last updated Feb. 12, 2024).

There are three separate mileage rates that may be used, in lieu of actual costs, to determine the allowable tax deduction, depending on whether the vehicle is used (1) for business purposes, (2) in providing charitable services, or (3) for medical care or for a member of the Armed Forces to move. Rev. Proc. 2019-46, 2019-49 I.R.B. 1301, at sec. 3.01, 4, 5. The Federal Government, in turn, may rely on the IRS business rate to reimburse employees who use privately owned vehicles for official government business "when that mode of transportation is authorized or approved as more advantageous to the Government." 5 U.S.C. § 5704(a)(1). Similarly, a witness who travels by private vehicle to attend a federal court proceeding may be reimbursed using the same rate

applicable to federal employee travel. *See* 28 U.S.C. § 1821(c)(2). For the periods at issue here, the reimbursable rates in cents per mile were as follows:

|  | IRS Business Rate | IRS Charitable Rate | IRS Medical or Military Moving Rate |
|---|---|---|---|
| 2020 | 57.5 | 14.0 | 17.0 |
| 2021 | 56.0 | 14.0 | 16.0 |
| 2022 | 62.5[6] | 14.0 | 22.0[7] |

IRS at https://irs.gov/tax-professionals/standard-mileage-rates.

Notably, when a privately owned vehicle is used for business purposes, the taxpayer generally "may deduct an amount equal to either the business standard mileage rate times the number of business miles traveled, or the actual fixed and variable costs the taxpayer pays or incurs that are allocable to traveling those business miles." Rev. Proc. 2019-46, at sec. 4.01. "Items such as: depreciation or lease payments; maintenance and repairs; tires; gasoline, including all taxes thereon; oil; insurance; and license and registration fees are included in fixed and variable costs for this purpose." *Id.* at sec. 4.02. On the other hand, "[a] deduction computed using the applicable standard mileage rate for charitable, medical, or moving expense miles is in lieu of a deduction for variable expenses, including gasoline and oil"; "[c]osts for items such as depreciation or lease payments, insurance, and license and registration fees are not deductible for these purposes and are not included in the charitable, medical, or moving standard mileage rate." *Id.* at sec. 5.03. The IRS "prospectively adjusts the standard mileage rates for business, medical, and moving expenses annually." *Id.* at sec. 1.

## III. PARTIES' ARGUMENTS

### A. Initial Pleadings

### *1. EAJA Application*

The appellant, prior to obtaining counsel, filed an EAJA application in March 2023, asserting that he is a prevailing party; he is eligible to receive an EAJA award; and the Government's position was not substantially justified. EAJA Application at 2-4. He contended that he is eligible for reimbursement of his costs under 28 U.S.C. § 2412(a) and for other fees and expenses under 28 U.S.C. § 2412(d)(1)(A), *id.* at 5-10, and he attached an itemization of the requested costs, fees, and expenses, *id.*, Exhibit 2. He sought $3,746.79 in reimbursement for expenses, including the Court's filing fee ($50), postage ($24.94), travel ($1,286.25), copying ($41.25), printer supplies and paper ($45), and internet access ($2,299.35 for 15 months of

---

[6] This rate applied beginning July 1, 2022. *See* IRS at https://irs.gov/tax-professionals/standard-mileage-rates.

[7] This rate applied beginning July 1, 2022. *See* IRS at https://irs.gov/tax-professionals/standard-mileage-rates.

6

service), and $8,338.72 as reimbursement for 52 hours of work he performed on his appeal and EAJA application. *Id.* at 1, Exhibit 2.

Regarding travel, he specified that he was requesting reimbursement for seven, 294-mile roundtrip visits to the University of Alabama Bounds Law Library, at a "government rate" of 62.5 cents per mile. *Id.*, Exhibit 2. His itemization reflects that he took two trips in 2020, four in 2021, and one in 2022. *Id.* As for the work he performed, he maintained that he provided "expert services" when preparing his merits appeal, which may be compensated as "'study' or 'analysis.'" *Id.* at 6 (quoting 28 U.S.C. § 2412(d)(2)(A)). In support, he provided a summary of his education and experience; he asserted that the type of work he performed most closely resembled paralegal services; and he sought an hourly rate of $160.36. *Id.* at 7-8, Exhibit 2.

### 2. Secretary's Response

The Secretary filed a response in which he did not dispute that the appellant is a prevailing party,[8] that he is eligible to receive an award, or that the Secretary's position was not substantially justified. Secretary's EAJA Response (Resp.) at 2-6. The Secretary, however, urged the Court to deny as a matter of law the appellant's request for fees because pro se appellants are prohibited from receiving attorney fees under EAJA and the appellant cannot circumvent that prohibition by labeling his request for reimbursement of his personal time as one for costs. *Id.* at 3-4. As for the requested expenses, the Secretary argued that, other than the $50 filing fee, they were not well documented, included overhead items, and were otherwise unreasonable. *Id.* at 4-6.

### 3. Appellant's Reply and Response to Court Order

In reply, the appellant asserted that the hours he spent performing study and analysis constitute "non-testimonial expert service[s]," which may be performed by non-attorneys, are compensated separately from attorney fees, and are compensable under EAJA. Appellant's EAJA Reply at 3; *see id.* at 3-6. Regarding his claimed expenses, he explained that postage was for mailing his Notice of Appeal and filing fee; the copying costs related to legal research at the law library; and printing expenses were incurred to make paper copies of legal research, documents from this Court's e-filing system, and documents from PACER/CMS.[9] *Id.* at 8. Further, he disputed that overhead expenses cannot be reimbursed to a pro se appellant because, without operating a law firm, he cannot absorb any overhead costs in an hourly attorney fee. *Id.* at 9. Last, he asked the Court to find that the Secretary has acted in bad faith and award him an additional $1 as a sanction. *Id.* at 13-14.

In response to a Court order, the appellant subsequently explained that he spent an estimated total of $307.76 on gasoline to travel to the law library. Appellant's July 10, 2023, Resp. at 2. He also provided an estimate for prorated expenses for oil and fluid changes, automobile repairs, automobile insurance, wear and tear on his tires, license plates, property tax, and

---

[8] During oral argument, the Secretary's counsel did not dispute that the appellant was only partially successful in the appeal of the November 2019 Board decision. Oral Argument (O.A.) at 47:13-48:15, http://www.uscourts.cavc.gov/documents/Delano.MP3.

[9] PACER/CMS is the efiling and docket system used by the Federal Circuit.

depreciation. *Id.* at 3, Exhibit 1. He argued that the estimate of actual expenses showed the fairness of using the IRS business rate to calculate his travel expenses. *Id.* at 3. Finally, he explained that he chose to utilize the Bounds Law Library because it provided more resources and personal access than law libraries located closer to his home, particularly considering additional restrictions that were in place during the COVID-19 pandemic. *Id.* at 3-4.

### *4. Motion for Reconsideration or a Panel Decision*

After the Court issued a single-judge order granting in part and dismissing in part the appellant's EAJA application, *Delano v. McDonough*, No. 20-5431(E), 2023 WL 5286916 (Vet. App. Aug. 17, 2023) (order), the appellant filed a timely motion for reconsideration or a panel decision. He first argued that the Court erred by denying reimbursement for printing costs, explaining that those expenses were incurred solely in connection with the case before the Court. Appellant's Motion for Reconsideration (MFR) at 2-3. As for his travel expenses, he asserted that the Court should have used the IRS business rate instead of relying on his estimated outlays for gasoline. *Id.* at 3-8. In that regard, he averred that the IRS business rate is the prevailing market rate for vehicle transportation expenses and is routinely accepted by courts as a reasonable method of calculating travel expenses. *Id.* at 4-8. Further, he contended that the Court erred by denying reimbursement for his own time spent litigating his appeal. *Id.* at 8-15.

In response, the Secretary asserted that the Court correctly denied the appellant's printing expenses as overhead costs not typically billed to a client. Secretary's Resp. to MFR at 2-3. Regarding travel expenses, the Secretary did not challenge the Court's finding that the appellant's travel to the Bounds Law Library was reasonable or that he could be reimbursed for the estimated cost of gasoline. *Id.* at 3-4. However, the Secretary argued that, although prevailing market rates are used in calculating the hourly rate that attorneys may be reimbursed under EAJA, the appropriate travel reimbursement is not determined based on prevailing market rates. *Id.* at 3. Moreover, the Secretary asserted, the appellant did not explain why the Court should use a rate intended for calculating tax deductions for automobile use for business purposes. *Id.* at 4.

### B. Supplemental Pleadings

### *1. Appellant*

The appellant, through counsel, first maintains that he is entitled to reimbursement for his time spent studying and analyzing his case. Appellant's Supplemental (Supp.) Memorandum (Memo.) at 3.[10] Turning to the matter of travel expenses, he argues that courts must rely on the prevailing market rate when determining the reasonable rate at which a cost or expense will be reimbursed. *Id.* at 5-6 (citing *Richlin*, 553 U.S. 571). Here, he avers, the federal government reimbursement rate is the prevailing market rate for travel reimbursement, *id.* at 7-8, and the Court does not have discretion to determine "'appropriate reimbursement' based on 'actual expenses' if that would lead the Court to grant reimbursement below the federal government mileage rate," *id.*

---

[10] The appellant also preserves his right to challenge to a higher tribunal this Court's holding in *March* that pro se litigants cannot be reimbursed for overhead and equipment maintenance expenses that an attorney would not ordinarily bill to a client. Appellant's Supp. Memo. at 3, 12.

at 4 (citation omitted). This is so, he continues, even if his actual costs and expenses were less than what would be compensated using the reimbursement rate. *Id.* at 8-9.

Next, although the appellant disputes that *Oliveira* applies to pro se EAJA applicants, he contends that using the federal government reimbursement rate would not run afoul of *March* and *Oliveira*. *Id.* at 10-13. Relying on *Ed A. Wilson, Inc. v. General Services Administration*, 126 F.3d 1406 (Fed. Cir. 1997), he contends that reimbursing all costs involved in operating a motor vehicle, including preventive maintenance and insurance, is consistent with EAJA's purpose of deterring unreasonable government action. Appellant's Supp. Memo. at 10. And he asserts that, because he is seeking reimbursement only for the times when he was driving his vehicle to and from the law library, the federal government reimbursement rate covers those expenses incurred solely in connection with the case before the Court and is "more sensible" than using actual costs reflected by gas receipts, which may not be an accurate reflection of gasoline used for travel for the case. *Id.* at 11; *see id.* at 10-11.

Regarding *March*, the appellant notes that the Court relied on *Oliveira* to deny a pro se appellant overhead-type expenses that would not normally be billed to a client, but "[t]he Court did not say how or why that would be a relevant consideration for someone such as the *pro se* petitioner in *March* who has no clients to charge and receives no fees in which to recover overhead expenses," and Mr. March did not appeal that aspect of the Court's decision to the Federal Circuit. *Id.* at 11; *see id.* at 11-12. Nonetheless, he contends that reimbursing him for travel expenses using the federal government rate is consistent with *March* because, in that case, the pro se appellant was reimbursed for what he paid for a bus ticket to travel to a law library. *Id.* at 12. He avers that this is similar to *Richlin*, where the petitioner was reimbursed for what it paid for paralegal services. *Id.* Finally, he maintains that, although the government reimbursement rate may compensate for costs such as gasoline, insurance, and depreciation, that is inconsequential because "[t]he expense claimed is 'travel,'" and those costs "are merely components of transportation" in the same way that the "[c]ourts reimburses airfare . . . instead of the jet fuel used by an attorney passenger." *Id.* at 13.

### *2. Secretary*

Initially, the Secretary asserts that, although the Court generally has discretion to determine the method for reimbursing expenses, use of the IRS business rate is not reasonable in the EAJA context and that the Court should instead rely on actual expenses. Secretary's Supp. Memo. at 2. As support, the Secretary distinguishes *Richlin*, explaining that it centered on whether the represented petitioner's payment for paralegal services must be reimbursed based on the prevailing market rate for those services, which is not analogous to reimbursing transportation costs. *Id.* at 2-3. Additionally, he avers that persuasive authority from other courts indicates that reimbursable EAJA expenses should be calculated based on the actual cost incurred, i.e., the "'sums actually expended,'" which would include the cost of gasoline. *Id.* at 3 (quoting *Merrell v. Block*, 809 F.2d 639, 642 (9th Cir. 1987)). Notably, he stresses that, in awarding reimbursement for the pro se appellant's bus fare in *March*, this Court relied on *Merrell* and thus suggested that it is actual expenses incurred that are awardable under EAJA to such an appellant. Secretary's Supp. Memo. at 3-4.

9

The Secretary further asserts that use of the IRS business rate to calculate travel expenses conflicts with *March* and *Oliveira* because the rate contemplates expenses that are not incurred solely in connection with a case before the Court, such as depreciation, maintenance, insurance, and taxes. *Id.* at 5-6. Instead, those costs are akin to overhead expenses incurred by a law firm, which would not customarily be billed to a client. *Id.* at 6. In contrast, the Secretary avers, reimbursement for the cost of fuel is comparable to the cost of bus fare that was reimbursed in *March* and would cover the appellant's actual, out-of-pocket expenses. *Id.*

Alternatively, if the Court were to utilize the IRS business rate here, the Secretary argues that the 2022 rate of 62.5 cents per mile is not appropriate for the appellant's trips that took place in 2020 and 2021, which should instead be compensated using the lower rates of 57.5 cents and 56 cents, respectively. *Id.* at 4. The Secretary also points out that three of the trips appear to be unrelated to the filing of the appellant's pleadings in this Court and instead may relate to his unsuccessful appeal to the Federal Circuit. *Id.* at 4 & n.2.

### 3. Amended Itemization

After oral argument, the appellant submitted under oath an amended itemization of the costs, fees, and expenses for which he seeks reimbursement. Appellant's June 10, 2024, Resp. In the amended itemization, he clarified that one trip to the library took place on April 29, 2021, rather than April 2, 2021; he added a request for reimbursement for 8.75 hours he spent on July 10, 2023, responding to a Court order[11]; he modified to $155.45 the hourly rate he seeks for his own time; and he reduced from $2,299.35 to $574.84 the amount he seeks for internet service. *Id.*, Exhibit 2. In total, he requests an award of $11,465.86, including $9,443.58 for his time and $2,022.28 for expenses. *Id.*

## IV. ANALYSIS

In this case, the appellant filed his EAJA application within the 30-day time period set forth in section 2412(d)(1)(B). *See Scarborough*, 541 U.S. at 408. The Secretary does not dispute that the appellant otherwise meets the predicate requirements for an EAJA award. *See Sandoval v. Brown*, 9 Vet.App. 177, 179 (1996). Because the Secretary contests as a matter of law the appellant's request for reimbursement for time he spent litigating his appeal, and because the Secretary contests the reasonableness of the appellant's request for expenses, the Court will address only those matters. *See* 28 U.S.C. § 2412(d)(1)(B).

### A. Expenses

It is well settled that a pro se litigant may receive an award of expenses under EAJA. *See Naekel*, 845 F.2d at 981; *March*, 7 Vet.App. at 168. The appellant here, who was unrepresented during the merits litigation, is thus generally eligible to be reimbursed for his litigation expenses. Controlling caselaw, however, places limits on the types of expenses that may be reimbursed, *see Oliveira*, 827 F.2d at 744; *March*, 7 Vet.App. at 170, and the Court has an obligation to ensure that

---

[11] Because this pleading was filed in defense of the appellant's initial EAJA application, this amounts to a request for a supplemental fee award or fees-for-fees. *See McNeely v. West*, 12 Vet.App. 162, 164 (1999) (per curiam order).

any requested expenses are reasonable and were necessary to the litigation, *March*, 7 Vet.App. at 169-70. Taking those principles into account, the Court will address in turn the items for which the appellant seeks an award of EAJA expenses.

### 1. Travel

#### a. Preliminary matters

As noted above, the appellant requests $1,286.25 for traveling 2,058 miles by personal vehicle seven times to the University of Alabama Bounds Law Library to conduct research for his appeal, and he requests that each mile be reimbursed using the IRS business rate of 62.5 cents per mile. EAJA Application, Exhibit 2; *see* IRS at https://irs.gov/tax-professionals/standard-mileage-rates. Because the Court in *March* awarded to a pro se appellant reimbursement for the cost of "bus fare to [a] law library," 7 Vet.App. at 168, the Court concludes that the cost of traveling to a law library is generally the type of expense that may be reimbursed to an unrepresented litigant under EAJA. Further, although the Court initially questioned the reasonableness of the number of miles traveled for this purpose, *Delano v. McDonough*, U.S. Vet. App. No. 20-5431(E) (July 10, 2023) (unpublished order), the appellant subsequently explained that he traveled to that specific library, even though there were closer law libraries, in part because of restrictions in place due to the COVID-19 pandemic. *See* Appellant's July 10, 2023, Resp. at 3-4. The Court is therefore satisfied that utilizing that library was reasonable under the unique circumstances of this case.

Additionally, the Court acknowledges that the Secretary questioned whether three of the appellant's trips were related to the litigation before this Court, *see* Secretary's Supp. Memo. at 4 & n.2, but the appellant has since filed under oath an amended itemization including the date and purpose of each trip, Appellant's June 10, 2024, Resp., Exhibit 2. Based on that, the Court is satisfied that all the trips pertained to the merits litigation before this Court or to the appellant's initial EAJA application. *See Oliveira*, 827 F.2d at 744 ("The quantum and method of proof of each allowable expense is discretionary with the . . . court."). The remaining question is whether the Court has discretion to reimburse the appellant only for his reasonable out-of-pocket expenses in making these trips, such as for gasoline, or whether the Court is required to reimburse him using the IRS business rate.

#### b. Prevailing market rate

The crux of the appellant's argument is that, pursuant to *Richlin*, the Court is *required* to reimburse his travel expenses using the IRS business rate because it is the prevailing market rate for calculating such expenses. Appellant's MFR at 4-8; Appellant's Supp. Memo. at 5-10.[12] Specifically, he maintains that the Supreme Court mandated use of any prevailing market rate not only in calculating attorney fees but also in calculating EAJA expenses, Appellant's Supp. Memo.

---

[12] Prior to obtaining counsel, the appellant argued generally that denying reimbursement for his travel expenses, as well as printing costs, violated "due process and equal protection under the Constitution." Appellant's MFR at 1. These arguments are, however, undeveloped and will not be addressed. *See Brewer v. West*, 11 Vet.App. 228, 236-37 (1998) (citing *Gov't and Civic Emps. Org. Comm'n, CIO v. Windsor*, 353 U.S. 364, 366 (1957) ("Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form.")).

at 5-7, and that this is so "irrespective of the [litigant's] actual cost," even if "actual travel costs and expenses [were] *less*" than the amount that would be compensated using the market rate, *id.* at 8 (emphasis in original). The Secretary, on the other hand, maintains that the appellant points to cases that "do not address the appropriate rate of reimbursement for travel," Secretary's Resp. to MFR at 3, and that *Richlin* is distinguishable because it involved a represented party seeking payment for services by a paralegal, Secretary's Supp. Memo. at 2-3.

As noted above, EAJA provides for reimbursement of "fees and other expenses . . . incurred by [a prevailing] party"; it also defines the term fees and other expenses as including "the reasonable expenses of expert witnesses, the *reasonable cost* of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees"; and it provides that "[t]he amount of fees awarded . . . shall be based upon *prevailing market rates* for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(1)(A), (d)(2)(A) (emphases added). In *Richlin*, the Supreme Court addressed whether a litigant should be reimbursed under a fee-shifting statute[13] for paralegal services based on the "prevailing market rates"—the amount the client was billed by the law firm—or for only the "reasonable cost"—the cost to the law firm to pay the salaries of paralegals. 553 U.S. at 574-75.

In resolving this dispute, the Supreme Court first explained that, because the client "'incurred'" the "'fees'" for paralegal services, "a straightforward reading of the statute leads to the conclusion that Richlin was entitled to recover fees for the paralegal services *it purchased at the market rate*." *Id.* at 577 (quoting 5 U.S.C. § 504(a)(1)) (emphasis added). Addressing the Government's contention that "fees" should be reimbursed at prevailing market rates, whereas "expenses" should be reimbursed based on reasonable cost, the Supreme Court explained that the statute "does not clearly distinguish between the rates at which 'fees' and 'other expenses' are reimbursed," and that "Congress may reasonably have believed that market rates would not exist" for a "'study, analysis, engineering report, test, or project.'" *Id.* at 577-78 (quoting 5 U.S.C. § 504(b)(1)(A)). Even if paralegal services could be compensated only at the reasonable cost, the Supreme Court determined that it would be "calculated from the perspective of the litigant," not "from the perspective of the party's attorney." *Id.* at 579. In that regard, the Supreme Court observed that "[i]t seems more plausible that Congress intended all 'fees and other expenses' to be recoverable *at the litigant's* 'reasonable cost,' subject to the proviso that 'reasonable cost' would be deemed to be 'prevailing market rates' when such rates could be determined." *Id.* at 579-80 (emphasis added). The Supreme Court further reasoned that the phrase "attorney fees" "was intended to embrace paralegal fees as well," and therefore the statute provides for recovery of paralegal services at prevailing market rates. *Id.* at 581. Ultimately, the Supreme Court held that reimbursement for paralegal fees should be based on the out-of-pocket cost paid by the client, which "would normally be equal to the 'prevailing market rat[e]' for such services." *Id.* at 584.

*Richlin* thus stands for the general proposition "that reimbursement for paralegal time to a prevailing party under [EAJA] should be made at 'prevailing market rates,' not at the 'reasonable cost' to the attorney." *Masias v. Sec'y of Health & Hum. Servs.*, 634 F.3d 1283, 1288 (Fed. Cir. 2011); *see Garrison*, 22 Vet.App. at 193 ("The Supreme Court held that, under EAJA, a prevailing

---

[13] Although the Supreme Court was addressing 5 U.S.C. § 504, it noted that its "reasoning . . . would extend equally to . . . [28 U.S.C. §] 2412." *Richlin*, 553 U.S. at 577 n.3; *see Garrison v. Peake*, 22 Vet.App. 192, 193 (2008) (concluding that the holding in *Richlin* "is fully applicable to EAJA awards under 28 U.S.C. § 2412(d)(1)(A)").

party is not limited in its recovery of paralegal fees to its attorney's cost for such services."). And, because that opinion resolved "whose expenditures get reimbursed (the attorney's or the client's)," rather than "how expenditures are calculated (at cost or at market)," *Richlin*, 553 U.S. at 580 n.5, it does not answer *how* to calculate the travel reimbursement for a pro se litigant. Further, given that the Supreme Court assumed that "the litigant's *out-of-pocket cost* for paralegal services would normally be *equal to* the 'prevailing market rat[e]," *id.* at 584 (emphases added), it does not support the proposition that the market rate should be used if the litigant's "actual . . . costs and expenses [were] *less*" than what would be compensated using that rate, Appellant's Supp. Memo. at 8; *see id.* at 6 (arguing that, according to *Richlin*, "where there exists a prevailing market rate of a cost or expense, this Court lacks discretion to determine an 'appropriate reimbursement' below that rate").

Nevertheless, to the extent that *Richlin* suggests that any EAJA expenses could be compensated using a prevailing market rate "when such rate[] could be determined," 553 U.S. at 580, the appellant has not shown that the IRS business rate constitutes such a rate.[14] As discussed above, the Government has a number of different mileage reimbursement rates—ranging from 14 to 62.5 cents per mile at the times pertinent to this appeal—depending on the purpose for which the vehicle is used, including reimbursing federal employees and witnesses for travel costs; allowing tax deductions for certain businesses, individual taxpayers who provide charitable services, and members of the Armed Forces who move; and compensating certain VA beneficiaries who travel to VA facilities. *See* 28 U.S.C. § 1821(c)(2); 38 U.S.C. § 111(a); IRS at https://irs.gov/tax-professionals/standard-mileage-rates. Notably, Congress has not set a mileage reimbursement rate specifically for the purposes of EAJA, nor has Congress endorsed use of any of these rates in the EAJA context. *See O'Brien v. Wilkie*, 30 Vet.App. 21, 27 (2018) (concluding that use of a different definition of "child" for Social Security Administration purposes reflected that "Congress knows how to include children such as the appellant's grandson in the definition of 'child' but has not done so for VA purposes"), *aff'd*, 948 F.3d 1339 (Fed. Cir. 2020); *see also Astrue v. Ratliff*, 560 U.S. 586, 595 (2010) (finding that differences between the Social Security Act and EAJA provisions reveal that "Congress knows how to make fee[] awards payable directly to attorneys where it desires to do so"). As for whether the Court could nonetheless be required to use one of these rates if it is considered prevailing, the appellant did not in his pleadings acknowledge the other reimbursement rates or explain why, given the various rates used by federal government entities, the IRS business rate could be considered "prevailing" for purposes of EAJA.

Instead, he suggests that the Court adopt the IRS business rate because courts have "routinely" used that rate to reimburse travel. Appellant's MFR at 8; *see id.* at 4 (arguing that courts have "acknowledged the reasonableness of using the [IRS business] [r]ate and have granted reimbursement solely on that basis without requiring additional documentation"), 5 n.5 (stating that the IRS business rate "is universally accepted in EAJA cases as reasonable because it is the

---

[14] The Court acknowledges the appellant's averment that the Federal Government is required to use the IRS business rate to reimburse employees pursuant to 5 U.S.C. § 5704(a) and witnesses pursuant to 28 U.S.C. § 1821(c)(2) even if the payment would exceed actual expenses. Appellant's Supp. Memo. at 7-8. However, his only contention as to why individuals not specifically covered by those statutory sections could be entitled to the same payment hinges on the IRS business rate being considered prevailing, Appellant's Supp. Memo. at 4-10, which he has not demonstrated. Additionally, to the extent that he points to caselaw allowing an EAJA reimbursement to a represented litigant even though the litigant did not incur out-of-pocket costs for legal fees, that caselaw is not pertinent to whether an unrepresented appellant's travel costs must be reimbursed using the IRS business rate. *Id.* at 9 (citing *Ed A. Wilson, Inc.*, 126 F.3d at 1406).

established market rate"); *see also* Appellant's Supp. Memo. at 7 (asserting that the IRS business rate "is well-established in practice as the prevailing market rate both before this Court and other federal courts for the reimbursement of travel costs"). As support, however, he relies on only a handful of nonprecedential decisions from this Court and district courts,[15] which are not binding on the Court. *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (holding that the Court is bound by panel or en banc decisions of this Court, decisions of the Federal Circuit, or decisions of the Supreme Court). Additionally, even though this Court and other courts have utilized the IRS business rate in calculating EAJA expenses, there is no indication that the rate was in dispute in those cases. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("'[W]hen [cases arise, courts] normally decide only questions presented by the parties.'" (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987))). Moreover, those cases do not include reasoned consideration of the question at issue here and do not address the caselaw, discussed below, limiting the types of expenses that may be reimbursed under EAJA. *See Bethea*, 2 Vet.App. at 254 (recognizing that nonprecedential authorities may be "relied upon . . . for any persuasiveness or reasoning [they] contain[]").

In sum, even assuming that the Court would be required to use the prevailing market rate to calculate travel expenses, the appellant has not demonstrated that the IRS business rate is the prevailing market rate or that the Court is otherwise bound to apply it in the EAJA context. The Court turns next to whether the Court, in its discretion, could opt to use that rate.

### c. *Oliveira* and *March*

Although a pro se appellant may be reimbursed for expenses under EAJA, the Federal Circuit and this Court have noted important limitations on what may be reimbursed. As outlined above, the expenses must be reasonable, customarily charged by an attorney to a client, incurred solely or exclusively in connection with the litigation, and supported by sufficient documentation. *Oliveira*, 827 F.2d at 744; *Cline*, 26 Vet.App. at 331; *March*, 7 Vet.App. at 170. It is well settled that overhead costs are not recoverable under EAJA because an attorney recoups those expenses through the attorney's hourly fee rather than through a separate charge to the client. *See Speigner*, 31 Vet.App. at 48; *see also Jenkins*, 491 U.S. at 296 (Rehnquist, C.J., dissenting) (explaining that overhead costs include everything from "secretarial staff, janitors, and librarians, to telephone service, stationery, and paper clips"); *United States v. Adkinson*, 256 F. Supp. 2d 1297, 1324 (N.D. Fla. 2003) (order) (finding that rent, furniture rental, utilities, and telephone charges are not expenses ordinarily billed by an attorney to a client), *aff'd*, 360 F.3d 1257 (11th Cir. 2004); *Bennett v. Dep't of Navy*, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983) ("Examples of expenses that would be

---

[15] Specifically, he cites *Dixon v. Wilkie*, No. 08-1475(E), 2018 WL 5278732 (Vet. App. Oct. 23, 2018) (order); *Groves v. McDonald*, No. 14-0269, 2015 WL 128172 (Vet. App. Jan. 9, 2015) (per curiam order); *Lankford v. Reladyne, LLC*, No. 1:14-cv-682, 2016 WL 3640691 (S.D. Ohio June 29, 2016) (order); *Lay v. Astrue*, No. 10-346-DLB, 2012 WL 5988822 (E.D. Ky. Nov. 29, 2012); *Harrison v. Astrue*, No. 1:10-cv-462, 2011 U.S. Dist. LEXIS 141774 (S.D. Ala. Dec. 8, 2011); *Schroeder v. United States*, No. CV 08–1277 AC, 2010 WL 3222106 (D. Or. Aug. 13, 2010). Appellant's MFR at 8; Appellant's Supp. Memo. at 7.

covered by the hourly rate include fixed overhead such as utilities, rent, and secretarial expense.").[16]

Here, the appellant acknowledges that the IRS business rate encompasses items such as depreciation, property tax, license plates, insurance payments, and registration fees associated with a private vehicle, but he contends that using that rate is nonetheless an appropriate method to calculate a travel reimbursement under EAJA and does not run afoul of *Oliveira* or *March*. Appellant's July 10, 2023, Resp. at 1; Appellant's Supp. Memo. at 10-13. Specifically, he avers that he would simply be compensated for "travel," Appellant's Supp. Memo. at 13, and for operation and maintenance of his vehicle only for the times "when he was traveling to the [library] in the present matter," *id.* at 11. The Secretary, on the other hand, maintains that use of the IRS business rate would conflict with *Oliveira* or *March* because it contemplates expenses that are not incurred solely in connection with a case before the Court, such as depreciation, maintenance, insurance, and taxes, and are akin to overhead expenses incurred by a law firm that would not customarily be billed to a client. Secretary's Supp. Memo. at 5-6.

As noted earlier, when a privately owned vehicle is used for business purposes, the taxpayer generally "may deduct an amount equal to either the business standard mileage rate times the number of business miles traveled, or the actual *fixed and variable costs* the taxpayer pays or incurs that are allocable to traveling those business miles." Rev. Proc. 2019-46, at sec. 4.01 (emphasis added). "Items such as: depreciation or lease payments; maintenance and repairs; tires; gasoline, including all taxes thereon; oil; insurance; and license and registration fees are included in *fixed and variable costs* for this purpose." *Id.* at sec. 4.02 (emphasis added). By contrast, "[a] deduction computed using the applicable standard mileage rate for charitable, medical, or moving expense miles is in lieu of a deduction for *variable* expenses, including gasoline and oil," and "[c]osts for items such as depreciation or lease payments, insurance, and license and registration fees . . . are not included in the charitable, medical, or moving standard mileage rate." *Id.* at sec. 5.03 (emphasis added). In other words, the higher IRS business rate (62.5 cents per mile in 2022), unlike the other IRS rates (ranging from 14 to 22 cents in 2022), is meant to allow tax deductions for both costs that vary based on how many miles a private vehicle is driven and for fixed costs that do not.

To the extent that the IRS business rate thus covers costs that would have been paid by a private vehicle owner regardless of the litigation, such as license plate fees, registration fees, and insurance, these are the type of expenses that cannot be reimbursed under EAJA because they are not incurred "solely or exclusively in connection with the case before the court." *Oliveira*, 827 F.2d at 744. Similarly, to the extent that the business rate covers items such as maintenance and repairs, those are the type of overhead expenses that cannot be reimbursed. *See March*, 7 Vet.App. at 170 (denying reimbursement for "equipment-maintenance and overhead items [that] . . . would not normally be billed to a client"). Indeed, the appellant acknowledges that a litigant could not receive an EAJA award for those expenses if they were separately itemized in the EAJA application. O.A. at 5:05-7:48. It follows that a litigant cannot circumvent the limitations outlined in *Oliveira* and

---

[16] The Court acknowledges the appellant's contention that a pro se litigant, who does not charge an hourly rate and cannot thereby recoup overhead costs, should not be prevented from seeking reimbursement for those types of expenses under EAJA. Appellant's EAJA Reply at 9; Appellant's Supp. Memo. at 3, 11-12. The Court, however, is bound by controlling caselaw in this regard. *See Bethea*, 2 Vet.App. at 254.

15

*March* by applying a government rate that bundles reimbursable costs with those that are not. Accordingly, the Court holds that use of the IRS business rate to calculate a pro se litigant's travel expenses under EAJA would contravene *Oliveira* and *March*.

In so holding, the Court is cognizant of the appellant's argument that it would be consistent with the purpose of EAJA to reimburse him for *any* costs involved in transportation by private vehicle in defending against unreasonable government action. Appellant's Supp. Memo. at 10 (citing *Ed A. Wilson, Inc*., 126 F.3d at 1410). The case on which he relies, however, is inapposite because the Federal Circuit was addressing "[t]he primary and narrow question" of whether the litigant had "'incurred' legal fees [under a fee-shifting statute] when its insurer [was] responsible for paying them." *Ed A. Wilson, Inc.*, 126 F.3d at 1408. The Federal Circuit answered in the affirmative, explaining, in part, that the litigant had "effectively incurred attorney fees by prepaying them via its [insurance] premium payments," *id.* at 1411 n.4, and that it would be contrary to EAJA's purpose—"'to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority'"—to deny "an award of fees for the attorney services that [the litigant] procured as part of its policy," *id.* at 1410 (quoting *Ardestani v. INS*, 502 U.S. 129, 138 (1991)). Given that the case concerned an award of attorney fees to a litigant who had retained counsel, it has no bearing on whether it would be inconsistent with the purpose of EAJA to deny a pro se litigant reimbursement for overhead expenses or costs not incurred "solely or exclusively in connection with the case before the court." *Oliveira*, 827 F.2d at 744; *see March*, 7 Vet.App. at 170.

Moreover, the Supreme Court has stressed that it would be contrary to the purpose of EAJA to "create a disincentive to employ counsel whenever . . . a plaintiff considered himself competent to litigate on his own behalf" and that, instead, "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive *to retain counsel in every such case*." *Kay*, 499 U.S. at 438 (emphasis added). Following that reasoning, it would not be in furtherance of the purpose of EAJA to reimburse litigants, who represent themselves, for any fixed costs they would incur regardless of the litigation. The Court thus finds unpersuasive the appellant's argument in this regard.

d. Actual costs

Having determined that the Court is not compelled or permitted to utilize the IRS business rate to calculate the appellant's travel reimbursement, the Court will exercise its discretion to determine a reasonable amount. *Jean*, 496 U.S. at 163; *Chesser*, 11 Vet.App. at 501. Initially, the Court notes that, at oral argument, there was some discussion as to whether the Court could apply the IRS medical and moving rate because it encompasses only variable costs, including gasoline and oil, and as a result might not contravene *Oliveira* and *March*. O.A. at 37:00-38:24; *see* Rev. Proc. 2019-46, at sec. 5.03. There was also discussion about the possible use of the VA beneficiary rate. O.A. at 34:00-36:35. Today, however, the Court will not address the propriety of using either of those rates because the appellant, in the numerous pleadings outlined above, did not acknowledge the existence of those rates, ask the Court to apply either rate, or explain whether it would comport with controlling caselaw. *See Wait v. Wilkie*, 33 Vet.App. 8, 19-20 (2020)

16

(declining to address an issue that had not been briefed by either party and had been raised only at oral argument).

Instead, the Court will award EAJA expenses based on the actual out-of-pocket costs of operating a private vehicle to visit the law library for which the appellant has provided sufficient documentation. In that regard, the appellant did not provide receipts reflecting what he paid for gasoline for those trips, but he did provide a detailed estimate of the amount he may have expended for that purpose based on the average miles per gallon attained by the make and model of vehicle he drove and the average price of gasoline at the time of each trip. Appellant's July 10, 2023, Resp. at 2, Exhibit 1 (estimating a total cost of $307.76 for gasoline). The Court concludes that this is sufficient to document his estimated outlays. *See Oliveira*, 827 F.2d at 744 ("The quantum and method of proof of each allowable expense is discretionary with the . . . court."); *Cline*, 26 Vet.App. at 331. Therefore, the Court will award the appellant $307.76 for gasoline.

The appellant also provided estimates of the amounts he spent on oil and transmission fluid, automobile repairs, insurance, tires, license plates, and property tax and an estimate of how much his vehicle depreciated in value, all prorated for the percentage of miles he drove during the relevant period solely to visit the library. Appellant's July 10, 2023, Resp. at 3, Exhibit 1. In line with the discussion above, the majority of these expenses—including automobile repairs, insurance, tires, license plates, property tax, and depreciation—either were not incurred solely in connection with the litigation or are overhead expenses, which are not reimbursable. Regarding oil and transmission fluid, assuming that this could be reimbursed under EAJA, the information provided by the appellant does not enable the Court to discern how much he may have spent solely for purposes of the library trips. Although he submitted an estimate of how much an oil change and a transmission fluid exchange might cost at a particular business, he did not indicate whether he purchased those services from that business, nor did he submit receipts for any such services or otherwise explain what he may have *actually* spent in that regard. *See Cline*, 26 Vet.App. at 331 (denying reimbursement for travel expenses when the appellant had "not provided sufficient information to determine the reasonableness of [the] expense"). Accordingly, the Court will deny reimbursement for the remainder of these expenses.

### 2. Internet Service, Printing Supplies, and Paper

The appellant requests reimbursement for 25% of his monthly internet service for 15 months, totaling $574.84, and $45 for printer supplies and paper. EAJA Application, Exhibit 2; Appellant's June 10, 2024, Resp., Exhibit 2. Because he has not provided any argument or evidence that his internet expenses were incurred "solely or exclusively" for the purpose of the litigation at the Court, and because he did not explain why 25% would be an appropriate amount to reimburse, *see* Appellant's June 10, 2024, Resp., Exhibit 2; O.A. at 23:52-24:20, the Court will disallow entirely reimbursement for that expense. *See Oliveira*, 827 F.2d at 744; *see also* Secretary's EAJA Resp. at 5 (arguing that the appellant does not provide "a rationale for why these expenses would be considered reasonable").

Further, to the extent that the appellant seeks an EAJA award for "printer supplies and paper," EAJA Application, Exhibit 2, the Court has held that expenses incurred by a pro se appellant for "equipment-maintenance and overhead items," such as batteries, typewriter ribbons,

17

and paper, "would not normally be billed to a client," *March*, 7 Vet.App. at 170. The Court acknowledges that, after his initial EAJA application, the appellant clarified that his printer supplies and paper costs were better characterized as printing expenses incurred to "print[] legal research information from the internet . . . and . . . print[] the Court's and Secretary's e-filings and other information from PACER/CMS . . . to avoid having to continually access them through PACER and drive[ ]up expenses."[17] Appellant's EAJA Reply at 8; *see* Appellant's MFR at 3. However, regardless of how this item is labeled, the Court in *March* explicitly held that the cost of "paper" may not be reimbursed. 7 Vet.App. at 170. From the appellant's pleadings, it is unclear what other items may be encompassed in his request for printing expenses, and he has not provided any documentation to support this request. *See Cline*, 26 Vet.App. at 331. Accordingly, the Court will deny reimbursement.

### 3. Postage, Copying, and Filing Fee

The final expenses for which the appellant seeks reimbursement are copying ($41.25), postage ($24.94), and the Court's filing fee ($50). There is no dispute that a pro se litigant may recover the Court's filing fee under EAJA. *See Cook*, 6 Vet.App. at 240; *see also* Secretary's EAJA Resp. at 2, 6. Accordingly, the Court will grant reimbursement for that expense. Further, because the appellant's EAJA application and reply indicate that the copying and postage expenses were incurred for his merits case before the Court and because they are of the type that would be customarily charged to a client by an attorney, the Court will grant reimbursement for those expenses. *See March*, 7 Vet.App. at 170 (granting reimbursement for photocopying and postage).

### B. Expert Services

The appellant requests reimbursement of $9,443.58 for 60.75 hours of work he performed on his merits appeal, in preparing his initial EAJA application, and in responding to the Court's July 2023 order regarding his request for travel expenses. Appellant's June 10, 2024, Resp., Exhibit 2. He requests an hourly rate of $155.45. *Id.* The Secretary asserts that the appellant is in essence seeking reimbursement for attorney fees and that time spent litigating an appeal is not a recoverable expense for a pro se appellant. Secretary's EAJA Resp. at 3-4; Secretary's Resp. to MFR at 4-5.

As discussed above, it is well settled that, in light of EAJA's purpose "to provide litigants with an incentive to retain counsel," *March*, 7 Vet.App. at 167, a litigant representing himself or herself may not be awarded attorney fees under EAJA, *see Kay*, 499 U.S. at 438 (holding that an attorney representing himself or herself is not entitled to attorney fees because it "would create a disincentive to employ counsel"); *Naekel*, 845 F.2d at 981 ("EAJA [does not] . . . authorize[] payment to Mr. Naekel for the time spent acting *pro se* in his appeal to this court."); *Cook*, 6 Vet.App. at 231-33 (holding that the Court does not have jurisdiction to award EAJA attorney fees to nonattorney practitioners who are not supervised by an attorney); *March*, 7 Vet.App. at 168 (concluding that "a pro se, non-attorney applicant's claim for fees under section 2412(d) must be denied"); *see also Haggart*, 38 F.4th at 169 (explaining that *Kay* "categorically barred pro se

---

[17] The Court notes that there is no charge for accessing the docket and pleadings through this Court's website and that a PACER account is not required.

litigants . . . from recovering attorney's fees for time spent pursuing their own cases"). Rather, in order to receive an award of fees under EAJA, there must be an attorney-client relationship. *See Kay*, 499 U.S. at 436; *Haggart*, 38 F.4th at 170; *Pickholtz*, 284 F.3d at 1374-75.

Here, the appellant's primary contention is that he is seeking reimbursement for time he spent conducting "studies, analyses[,] or expert tasks that are not legally reserved to attorneys" and that the Secretary and the Court thus erred in characterizing his request as seeking attorney fees. Appellant's MFR at 9 (emphasis omitted); *see id.* at 9-15; Appellant's Supp. Memo. at 3. However, the appellant's itemized list of the tasks he performed during the 60.75 hours includes "[s]tudy[ing] and [a]naly[zing] . . . the Board's decision"; identifying "possible Board errors" and "evidence not discussed or not correctly addressed by the Board"; "[s]tudy[ing] and [a]naly[zing the record before the agency (RBA)] to . . . identify possible issues with the RBA"; conducting research on precedents, statutes, regulations, and VA guidance documents; "identifying and framing the issues to be presented based [on] the facts and case history"; studying and analyzing his "draft informal brief for weaknesses"; "[a]naly[zing] arguments for [his] draft reply brief"; "study[ing] EAJA law and caselaw"; and "[a]naly[zing] draft arguments for [his] EAJA application." Appellant's June 10, 2024, Resp., Exhibit 2.

Regardless of how the appellant characterizes these tasks, they constitute "hours he . . . spent prosecuting his appeal on the merits before this Court and . . . preparing his EAJA application." *March*, 7 Vet.App. at 166; *see Kooritzky v. Herman*, 178 F.3d 1315, 1322 (D.C. Cir. 1999) ("Allowing a *pro se* attorney-litigant to recover fees for legal services rendered during the course of litigation by characterizing them as 'expenses of expert witnesses' or the 'reasonable cost' of various studies, rather than 'attorney fees' would vitiate the holding of *Kay* as applied to the EAJA and would make the determination of fee eligibility rest solely on the semantics of the litigant's fee petition."). As in *Naekel*, this amounts to a request for payment "*for his*[] *own time expended on his*[] *own behalf*," which Congress did not intend to compensate.[18] 845 F.2d at 980 (emphasis added); *see Haggart*, 38 F.4th at 169 (reiterating that the legislative purpose of fee-shifting statutes in making wronged claimants whole "does not mean that pro se litigants may receive fees for their own expenditures of time and energy representing themselves in litigation"); *Groves v. Shinseki*, 541 F. App'x 981, 984 (Fed. Cir. 2013) (per curiam) ("[T]he time spent by a pro se litigant on such efforts as legal research is not recoverable."). Therefore, the Court will deny this request. *See March*, 7 Vet.App. at 170 (disallowing the pro se appellant's "application for EAJA fees for the hours he spent representing himself before this Court in the underlying appeal and in his EAJA application").[19]

---

[18] To the extent that the appellant contends that, while pursuing his merits appeal, he incurred "opportunity costs" and "consequential expenses" by diverting time from income-producing activities and hiring others to replace him in activities he usually performs, EAJA Application at 8-9, he did not request any specific reimbursement in that regard, and the Court will not further address that contention.

[19] Although the Court in *March* indicated that the appropriate outcome would be to dismiss for lack of jurisdiction when a pro se litigant requests EAJA fees as reimbursement for his own time, 7 Vet.App. at 170, the Supreme Court and this Court have since clarified that "[j]urisdiction is fundamentally about subject matter and so a rule is deemed jurisdictional when it delimits 'the classes of cases a court may entertain,'" *Ferko v. McDonough*, __ Vet.App. __, __, 2024 WL 2721889, at *3 (2024) (en banc) (quoting *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019)). Here, there is no question that the Court has jurisdiction over matters arising under 28 U.S.C. § 2412(d). *See Cook*, 6 Vet.App. at 236.

## C. Costs Under Section 2412(a)

Prior to obtaining counsel, the appellant appeared to contend that the Court may award costs pursuant to 28 U.S.C. § 2412(a). EAJA Application at 5-6; Appellant's EAJA Reply at 3. Section 2412(a) provides in part that "a judgment for costs . . . but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought . . . against the United States." However, the Court in *Cook* concluded that the Court "lack[s] . . . jurisdiction to award a judgment for costs under 28 U.S.C. § 2412(a)"; rather, it is only subsection (d) of section 2412 that applies to this Court. 6 Vet.App. at 236. Accordingly, to the extent that the appellant is seeking costs under section 2412(a), the Court will dismiss that portion of his EAJA application. *See Cook*, 6 Vet.App. at 227; *see also March*, 7 Vet.App. at 170 ("[E]ven though EAJA section 2412(a) does not apply to this Court, an appellant is not prohibited from recovering an expense under section 2412(d) . . . .").

## D. Sanctions

Also prior to obtaining counsel, the appellant requested monetary sanctions in the amount of $1 to cover the cost of the envelope used to mail his "appeal application and fee." Appellant's EAJA Reply at 13; *see id.* at 13-15. The appellant argued that the Secretary retaliated against him by engaging in "egregious delays and malicious actions." *Id.* at 13. The Court has "the power to sanction those who abuse the judicial process under the 'inherent power of the federal courts.'" *Jones v. Derwinski*, 1 Vet.App. 596, 606 (1991) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). However, sanctions are reserved for actions that defy a clear court order. *See Pousson v. Shinseki*, 22 Vet.App. 432, 436 (2009) (per curiam order). The appellant has not alleged or demonstrated any such actions on the part of VA in this case. *See id.*; *see also Belton v. West*, 13 Vet.App. 200, 204 (1999) (per curiam order) (finding sanctions not warranted when "the circumstances [did] not support any findings that the Secretary acted in bad faith . . . or otherwise disobeyed or resisted [Court] orders").

## E. Summary

Based on the above, the Court concludes that the IRS business rate cannot be used to calculate the appellant's reimbursement for travel expenses. The Court will instead calculate an award based on the actual travel costs that were incurred solely and exclusively in connection with the litigation before this Court, do not constitute overhead, and were sufficiently documented. That results in an award of $307.76 for gasoline. As for the remainder of his requested expenses, the Court will deny reimbursement for internet service on the ground that it was not incurred solely or exclusively in connection with the litigation, and the Court will deny reimbursement for printing supplies and paper on the grounds that they constitute overhead expenses and are not sufficiently documented. The Court will grant reimbursement for copying ($41.25), postage ($24.94), and the Court's filing fee ($50). Finally, the Court will deny in its entirety the request for $9,443.58 in fees for work the appellant performed on his own appeal and EAJA application. In total, the Court will thus award $423.95.

## V. CONCLUSION

Upon consideration of the foregoing, the appellant's March 13, 2023, EAJA application is GRANTED, IN PART, in the amount of $423.95. The EAJA application is DISMISSED to the extent that the appellant seeks costs pursuant to 28 U.S.C. § 2412(a).

DATED:  August 9, 2024

LAURER, *Judge*, concurring: I agree in full with the above order and its holding that, under the EAJA, the Court must ensure that the taxpayers don't reimburse appellant beyond his actual travel costs. I write separately to emphasize a key problem already discussed: that Congress hasn't set a statutory rate for mileage reimbursement under the EAJA. Given all the analysis about travel costs, it's clear that this inaction impairs our performance—a legal speed bump of sorts. We face a seemingly minor challenge that, in the aggregate, may cause significant inefficiencies. So Congress's omission burdens courts and costs taxpayers. I'll briefly describe the scope of the problem, explain why the Court can't fix it, and propose a potential statutory fix that tracks EAJA's intentions.

Let me describe why having to determine actual travel costs is difficult. To start, reviewing actual costs requires the Court to consider far too many details and burdens an applicant. Here, although the Court accepted appellant's estimate on the cost of gasoline, the estimate is based on unique factors: the make and model of appellant's car and the average gasoline price the week he traveled to the law library. Appellant's estimate required detailed research to calculate, plus the Court is now reviewing matters that exceed its expertise. Considering appellant also submitted 2 years' worth of costs and receipts to substantiate his full cost, an actual cost rule is onerous both on applicants and the Court. Second, the Court had to issue multiple orders to obtain the relevant documents. Finally, the Court's assessment of actual costs required a meticulous evidentiary audit. All told, determining appellant's actual costs was a heavy lift. In doing so, we saw a conflict between reimbursing appellant's actual costs and a foundational tenet of EAJA caselaw: that EAJA applications shouldn't spark litigation.

EAJA applications generally shouldn't lead to a second major litigation. *Speigner v. Wilkie*, 31 Vet.App. 41, 49 (2019) (citing *Pierce v. Underwood*, 487 U.S. 552, 563, (1988)). Likewise, the Court has also favored straightforward, broad, and flexible approaches to avoid painstakingly reviewing every item in an EAJA application. *See Baldridge v. Nicholson*, 19 Vet.App. 227, 242-43 (2005) (endorsing a percentage-based reduction—despite being less precise—to avoid the need to trifle with individual line-item reductions); *see also Fox v. Vice,* 563 U.S. 826, 838 (2011) (stating that courts "need not, and indeed should not, become green eye-shade accountants" because "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection"). But just look at the Court's extensive efforts to calculate actual travel costs. So the lack of a statutory reimbursement rate creates impediments. While the Court shouldn't escalate the dispute, without an established rate we have no choice.

What's more, given the level of precision required to ensure accurate reimbursement, I see another significant issue: the Court's holding here encourages supplemental EAJA applications. Determining actual travel costs requires precision, a circumstance ripe for competing formulas and

21

different calculations. In short, we've invited extra litigation to ensure accurate actual travel costs—which may trigger additional EAJA fees. *See Wagner v. Shinseki*, 640 F.3d 1255, 1259 (Fed. Cir. 2011) (holding that an appellant is entitled to compensation for an attorney's work defending an initial EAJA application, a situation often called obtaining fees-on-fees).

Again, Congress hasn't set a mileage rate under the EAJA. And as we've decided, any time an applicant—represented or self-represented—requests mileage reimbursement, the law authorizes no more than actual costs. So, as I see it, a request for mileage reimbursement introduces an actual cost dispute. Meaning, an actual costs framework creates additional EAJA litigation and results in additional supplemental EAJA fees—a result many taxpayers presumably would disfavor. *Parrott v. Shulkin*, 851 F.3d 1242, 1249 (Fed. Cir. 2017) ("Congress passed EAJA to (1) ensure adequate representation for those needing to vindicate their rights against the [G]overnment and (2) minimize the cost of this redress to taxpayers."). Finally, a practical point: our Court has a national bar, and the business of the Court often requires travel for oral arguments. Considering that some travel is completed using privately owned vehicles, an actual travel cost reimbursement rate turns adversarial cases more contentious. I recognize that mileage reimbursement is an infrequent problem. I also acknowledge that the Secretary plays a pivotal role in the EAJA process, while the Court generally reviews few EAJA cases for reasonableness. But since this minor problem runs counter to EAJA's larger goals, it's significant.

While the Court can describe this challenge, it can't set a default reimbursement rate to solve it. It's a policy decision that implicates the public fisc and government spending, which is Congress's responsibility. *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*, *Ltd.*, 601 U.S. 416, 420 (2024) ("Our Constitution gives Congress control over the public fisc . . . ."); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537-38 (2012) (explaining that to respect the separation of powers, judges are "vested with the authority to interpret the law" and not "to make policy judgments"). And Congress has shown willingness to standardize rates with other court-related travel reimbursement for witnesses—adding a more compelling reason for the Court to refrain from doing so here. *Compare* 28 U.S.C. § 1821, *with* 28 U.S.C. § 2412. *See Russello v. United States*, 464 U.S. 16, 22-23 (1983) (endorsing the view that, when Congress includes particular language in one section of a statute but omits it in another section of the same act, courts presume that the dissimilar treatment by Congress is intentional).

Given the amount of EAJA applications in this and other federal courts, establishing a standardized reimbursement rate would simplify proceedings, reduce litigation, and likely minimize supplemental fees. In short, a standardized mileage reimbursement rate would improve EAJA proceedings.

But what's an appropriate default travel reimbursement rate? Although that's a quintessential question for Congress, I offer my thoughts. As explained above, accurate travel reimbursement under the EAJA aims to capture the variable costs without fixed costs. If Congress wants to continue to adhere to the "no fixed costs" rule, then that points to the IRS medical and

22

moving rate. This rate focuses on variable costs—the actual costs—and is a metric that the IRS updates annually.

At bottom, Congress should consider amending the EAJA and setting the IRS medical and moving rate as the default travel reimbursement rate. Congress could remove this impediment and allow the Court to better focus on its core mission—ensuring that the Board fulfills the law and treats claimants fairly. Eliminating this speed bump would also solve difficulties other federal courts likely face with similarly contested EAJA applications.